# IMMIGRATION AND NATURALIZATION SERVICE *v.* RIOS-PINEDA ET AL.

No. 83-2032.   Argued March 20, 1985—Decided May 13, 1985

WHITE, J., delivered the opinion of the Court, in which all other Members joined, except POWELL, J., who took no part in the consideration or decision of the case.

*Alan I. Horowitz* argued the cause for petitioner. With him on the briefs were *Solicitor General Lee, Acting Assistant Attorney General Willard, Deputy Solicitor General Geller,* and *James A. Hunolt.*

*Lawrence H. Rudnick* argued the cause for respondents. With him on the brief was *Roman de la Campa.*

JUSTICE WHITE delivered the opinion of the Court.

Section 244(a)(1) of the Immigration and Nationality Act (Act), 66 Stat. 214, as amended, 8 U. S. C. § 1254(a)(1), allows the Attorney General to suspend the deportation of an alien. To warrant such action, the alien must have been physically present in the United States for a continuous period of at least seven years, be of good moral character, and demonstrate that deportation would result in extreme hardship to the alien, or the alien's "spouse, parent, or child,

who is a citizen of the United States or an alien lawfully admitted for permanent residence." *Ibid.* Even if these prerequisites are satisfied, it remains in the discretion of the Attorney General to suspend, or refuse to suspend, deportation. *INS* v. *Jong Ha Wang*, 450 U. S. 139, 144, n. 5 (1981); *Jay* v. *Boyd*, 351 U. S. 345, 353 (1956). Although Congress did not provide a statutory mechanism for reopening suspension proceedings once suspension has been denied, the Attorney General has promulgated regulations under the Act allowing for such a procedure. 8 CFR § 3.2 (1985). Under the regulations, a motion to reopen will be denied unless reopening is sought on the basis of circumstances which have arisen subsequent to the original hearing. *Ibid.* The Attorney General, authorized by Congress to do so, 8 U. S. C. § 1103, has delegated his authority and discretion to suspend deportation to special inquiry officers of the Immigration and Naturalization Service (INS), whose decisions are subject to review by the Board of Immigration Appeals (BIA). 8 CFR §§ 242.8, 242.21 (1985).

Respondents, a married couple, are natives and citizens of Mexico. Respondent husband illegally entered the United States in 1972. Apprehended, he returned to Mexico in early 1974 under threat of deportation. Two months later, he and respondent wife paid a professional smuggler $450 to transport them into this country, entering the United States without inspection through the smuggler's efforts. Respondent husband was again apprehended by INS agents in 1978. At his request, he was granted permission to return voluntarily to Mexico in lieu of deportation. He was also granted two subsequent extensions of time to depart, but he ultimately declined to leave as promised. INS then instituted deportation proceedings against both respondents. By that time, respondent wife had given birth to a child, who, born in the United States, was a citizen of this country. A deportation hearing was held in December 1978. Respondents conceded illegal entry, conceded deportability, but re-

quested suspension of deportation. The Immigration Judge, ruling that respondents were ineligible for suspension because they had not satisfied the requirement of seven years' continuous physical presence, ordered their deportation. Respondents appealed the order to the BIA, asserting a variety of arguments to establish that the deportation violated their rights or the rights of their child. The BIA rejected these arguments and dismissed the appeal.

In July 1980, respondents filed a petition for review in the Court of Appeals, which automatically stayed their deportation pursuant to 8 U. S. C. § 1105a(a)(3). Asking that the court order their deportation suspended, respondents asserted substantially the same claims rejected by the BIA: that the Immigration Judge should have given them *Miranda* warnings, that their deportation was an unlawful *de facto* deportation of their citizen child, and that respondent husband should have been considered present in the United States for seven years. In March 1982, 15 months after the briefs were filed, the Court of Appeals reversed the decision of the BIA and remanded the case for further proceedings. *Rios-Pineda* v. *United States Department of Justice*, 673 F. 2d 225 (CA8). The Court of Appeals was of the view that during the pendency of the appeals, respondents had accrued the requisite seven years' continuous physical presence in the United States. *Id.*, at 227. Because of this development, the court directed the BIA to allow respondents 60 days to file a motion to reopen their deportation proceeding and cautioned the BIA "to give careful and thorough consideration to the . . . motion to reopen if, indeed, one is filed." *Id.*, at 228, n. 5. During the pendency of the appeals, respondent wife gave birth to a second citizen child.

Respondents then moved the BIA to reopen and requested suspension of deportation. They alleged that deportation would result in extreme hardship in that their two citizen children would be deprived of their right to an education in United States schools and to social assistance. Respondents

also alleged general harm to themselves from their "low skills and educations" and the lower standard of living in Mexico.

The BIA denied the motion to reopen. First, the motion was not timely filed, as respondents had not served it on the proper official within the specified 60 days. Second, discretionary relief was unwarranted, since the additional facts—seven years' continuous physical presence and an additional child—were available only because respondents had delayed departure by frivolous appeals. Third, respondent husband's conduct in returning to the country only two months after his 1974 departure, respondents' payment to a professional smuggler to enter this country illegally, and respondent husband's refusal to depart voluntarily after promising to do so, all evinced a blatant disregard for the immigration laws, disentitling respondents to the favorable exercise of discretion.

The Court of Appeals reversed and directed the BIA to reopen the proceeding. *Rios-Pineda* v. *United States Department of Justice*, 720 F. 2d 529 (CA8 1983). The motion to reopen, the panel concluded, was timely filed,[1] respondents had made out a prima facie case of hardship, and the factors relied on by the BIA did not justify its refusal to reopen. Although the court did not find merit in any of the legal arguments respondents had pressed during their prior appeals, their appeals were not frivolous. Neither could the BIA deny a motion to reopen because of respondents' disregard of the immigration laws, since such disregard is present in some measure in all deportation cases. *Id.*, at 534.

We granted certiorari, 469 U. S. 1071 (1984), because this case involves important issues bearing on the scope of the Attorney General's discretion in acting on motions to reopen civil requests for suspension of deportation.

---

[1] The issue of whether the motion to reopen was timely filed is not before this Court, and we assume, without deciding, that timely filing was established by service of the motion on the wrong official within the period required by the Court of Appeals' first decision. See 720 F. 2d, at 532.

We have recently indicated that granting a motion to reopen is a discretionary matter with BIA. *INS* v. *Phinpathya*, 464 U. S. 183, 188, n. 6 (1984). Thus, even assuming that respondents' motion to reopen made out a prima facie case of eligibility for suspension of deportation, the Attorney General had discretion to deny the motion to reopen. *INS* v. *Jong Ha Wang*, 450 U. S. 139, 144, n. 5 (1981). We have also held that if the Attorney General decides that relief should be denied as a matter of discretion, he need not consider whether the threshold statutory eligibility requirements are met. *INS* v. *Bagamasbad*, 429 U. S. 24 (1976); see also *Jong Ha Wang*, 450 U. S., at 143–144, n. 5.

Given the Attorney General's broad discretion in this context, we cannot agree with the Court of Appeals' holding that denial of the motion to reopen was an impermissible exercise of that discretion. If, as was required by the regulations, respondents' motion to reopen was based on intervening circumstances demonstrating 7-year residence and extreme hardship, the Attorney General, acting through the BIA, nevertheless had the authority to deny the motion for two separate and quite adequate reasons.

First, although by the time the BIA denied the motion, respondents had been in this country for seven years, that was not the case when suspension of deportation was first denied;[2] the seven years accrued during the pendency of

---

[2] Even prior to our decision in *INS* v. *Phinpathya*, 464 U. S. 183 (1984), while the administrative practice treated some minor absences as not breaking the continuous presence period, neither the courts nor the Attorney General had ever considered a departure under threat of deportation, coupled with a subsequent illegal entry after two months' absence, anything less than a meaningful interruption of the period. Not only had the Immigration Judge explained, both at the deportation hearing and in his written decision, App. to Pet. for Cert. 27a, that such an absence was an interruption of the period of continuous presence, the law itself was clear. See *Heitland* v. *INS*, 551 F. 2d 495, 503–504 (CA2), cert. denied, 434 U. S. 819 (1977); *Segura-Viachi* v. *INS*, 538 F. 2d 91, 92 (CA5 1976); *Barragan-Sanchez* v. *Rosenberg*, 471 F. 2d 758, 760 (CA9 1972); see generally *Phinpathya, supra*, at 193–194.

respondents' appeals. The BIA noted that respondents' issues on appeals were without merit and held that the 7-year requirement satisfied in this manner should not be recognized. In our view, it did not exceed its discretion in doing so.

The Court of Appeals thought the appeal had not been frivolous because it had resulted in further proceedings. But this was true only because seven years of residence had accrued during the pendency of the appeal. No substance was found in any of the points raised on appeal, in and of themselves, and we agree with the BIA that they were without merit. The purpose of an appeal is to correct legal errors which occurred at the initial determination of deportability; it is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites. One illegally present in the United States who wishes to remain already has a substantial incentive to prolong litigation in order to delay physical deportation for as long as possible. See, e. g., Sung Ja Oum v. INS, 613 F. 2d 51, 52–54 (CA4 1980); Hibbert v. INS, 554 F. 2d 17, 19–21 (CA2 1977). The Attorney General can, in exercising his discretion, legitimately avoid creating a further incentive for stalling by refusing to reopen suspension proceedings for those who became eligible for such suspension only because of the passage of time while their meritless appeals dragged on. See Leblanc v. INS, 715 F. 2d 685, 693 (CA1 1983); Agustin v. INS, 700 F. 2d 564, 566 (CA9 1983); Balani v. INS, 669 F. 2d 1157, 1160–1162 (CA6 1982); Der-Rong Chour v. INS, 578 F. 2d 464, 467–468 (CA2 1978), cert. denied, 440 U. S. 980 (1979); Schieber v. INS, 171 U. S. App. D. C. 312, 320–321, 520 F. 2d 44, 52–53 (1975).

The impact of any other rule is pointed out by this case. Respondents were apprehended in 1978, and they conceded deportability. Nonetheless, over six years later they remain in the United States by virtue of their baseless appeals. In administering this country's immigration laws, the Attorney General and the INS confront an onerous task even without

the addition of judicially augmented incentives to take merit-less appeals, engage in repeated violations, and undertake other conduct solely to drag out the deportation process. Administering the 7-year requirement in this manner is within the authority of the Attorney General. The Act commits the definition of the standards in the Act to the Attorney General and his delegate in the first instance, "and their construction and application of th[ese] standard[s] should not be overturned by a reviewing court simply because it may prefer another interpretation of the statute." *INS* v. *Jong Ha Wang, supra,* at 144.

Second, we are sure that the Attorney General did not abuse his discretion in denying reopening based on respondents' flagrant violation of the federal law in entering the United States, as well as respondent husband's willful failure to depart voluntarily after his request to do so was honored by the INS. The Court of Appeals' rejection of these considerations as "irrelevant" is unpersuasive. While all aliens illegally present in the United States have, in some way, violated the immigration laws, it is untenable to suggest that the Attorney General has no discretion to consider their individual conduct and distinguish among them on the basis of the flagrancy and nature of their violations. There is a difference in degree between one who enters the country legally, staying beyond the terms of a visa, and one who enters the country without inspection. Nor does everyone who illegally enters the country do so repeatedly and with the assistance of a professional smuggler. Furthermore, the Attorney General can certainly distinguish between those who, once apprehended, comply with the laws, and those who refuse to honor previous agreements to report for voluntary departure. Accordingly, we are convinced that the BIA did not abuse its discretion in denying reopening because of respondents' prior conduct.

This case, therefore, does not involve the unreasoned or arbitrary exercise of discretion. Here the BIA's explanation of its decision was grounded in legitimate concerns about the

administration of the immigration laws and was determined on the basis of the particular conduct of respondents. In this government of separated powers, it is not for the judiciary to usurp Congress' grant of authority to the Attorney General by applying what approximates *de novo* appellate review. See *Jong Ha Wang,* 450 U. S., at 144–145; *Phinpathya,* 464 U. S., at 195–196. Because we conclude that here the refusal to reopen the suspension proceeding was within the discretion of the Attorney General, we reverse the decision of the Court of Appeals.

*So ordered.*

JUSTICE POWELL took no part in the consideration or decision of this case.