Grace WILLIAMS, Petitioner,
Appellant,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent,
Appellee.

No. 85–1139.

United States Court of Appeals,
First Circuit.

Argued Aug. 6, 1985.

Decided Sept. 13, 1985.

Mark L. Galvin of Watt, Galvin & San-
chez, Providence, R.I., for petitioner, appel-
lant.

Morris Deutsch, Washington, D.C., with
whom Michael P. Lindemann, James A. Hu-
nolt and Richard K. Willard, Washington,
D.C., were on brief for the Government.

Before CAMPBELL, Chief Judge,
BOWNES and TORRUELLA, Circuit
Judges.

BOWNES, Circuit Judge.

We review an order of the Immigration
and Naturalization Service Board of Immi-
gration Appeals (BIA) not to reopen a de-
portation proceeding. The order prevents
petitioner from applying for a stay of de-
portation and for adjustment of status un-
der 8 U.S.C. § 1255 (1982).

Petitioner Grace Williams, a native and
citizen of Liberia, entered the United States
on July 24, 1970, as a nonimmigrant stu-
dent authorized to remain until July 23,
1971. Petitioner overstayed her authoriza-
tion by four and one-half years. On De-
cember 18, 1975, the INS issued an order to
show cause why she should not be deport-
ed. After the hearing, petitioner was
found deportable and granted the privilege
of voluntarily departing by March 1, 1976.
This date was later extended to April 21,
1976. Because she failed to depart volun-
tarily, petitioner was ordered deported on
June 21, 1976. She left the United States
on her own on June 19, 1976.

Petitioner promptly reentered the United
States on June 25, 1976, as a nonimmigrant
student with permission to remain until
February 15, 1977. She had procured this
student visa without having revealed the
circumstances of her earlier departure or
having sought reentry permission from the
Attorney General as required by 8 U.S.C.

§§ 1325, 1326. On July 18, 1977, petitioner requested an extension, which was denied. The INS did, however, grant her until August 2, 1977, to depart voluntarily, which she did not do. On August 18, 1977, the INS issued an order to show cause why petitioner should not be deported. On August 1, 1978, the show-cause deportation proceedings were terminated when an immigration judge gave petitioner permission to reapply *nunc pro tunc* for admission.

Another show cause order was issued on September 1, 1978, charging petitioner with overstaying her student visa authorization period. Petitioner, after a hearing, was found deportable for overstaying her visa authorization; she was again granted voluntary departure. No appeal was taken from this decision. Petitioner received an extension of her voluntary departure date to December 6, 1980, but, following her prior practice, she did not leave the United States on the departure date.

On January 26, 1983, petitioner moved to reopen her deportation proceedings so she could apply for adjustment of status to that of a lawful permanent resident because of an earlier marriage to a United States citizen. The immigration judge denied the motion the day it was filed because it lacked critical supporting documentation. The BIA affirmed on December 30, 1983. No further review was sought by petitioner. She was ordered to report for deportation on February 23, 1984, which, of course, she did not do. The INS could not find petitioner until May 30, 1984, when her husband (second) filed a visa petition on her behalf. Petitioner was ordered to surrender for deportation on November 1, 1984.

On November 6, 1984, petitioner's counsel notified INS that he would move to reopen so as to seek adjustment of status based on her husband's visa petition, and requested a stay of deportation pending determination of the motion. Petitioner and her counsel appeared at the INS office on November 9. The motion to reopen was filed on November 14. It was referred to the BIA which denied it as a matter of discretion on January 15, 1985. The Board found that petitioner's history of abuses of the immigration laws and repeated breaches of privileges granted her outweighed any favorable factors. We affirm.

The decision whether to reopen deportation proceedings is committed to the discretion of the Board. *I.N.S. v. Rios-Pineda,* — U.S. —, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985); *I.N.S. v. Jong Ha Wang,* 450 U.S. 139, 144–45, 101 S.Ct. 1027, 1031–32, 67 L.Ed.2d 123 (1981); *I.N.S. v. Bagamasbad,* 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976) (per curiam). A motion to reopen will not be granted unless a *prima facie* case for relief is established. *I.N.S. v. Jong Ha Wang,* 450 U.S. at 141, 101 S.Ct. at 1029; *Luna v. I.N.S.,* 709 F.2d 126, 127 (1st Cir.1983). But "if the Attorney General decides that relief should be denied as a matter of discretion, he need not consider whether the threshold statutory eligibility requirements are met." *Rios-Pineda,* — U.S. at —, 105 S.Ct. at 2102. The issue, therefore, is whether the Board's refusal to reopen was arbitrary, capricious or an abuse of discretion. *Holley v. I.N.S.,* 727 F.2d 189, 190–91 (1st Cir.1984); *Mesa v. I.N.S.,* 726 F.2d 39, 41 (1st Cir.1984).

In *LeBlanc v. I.N.S.,* 715 F.2d 685 (1st Cir.1983), we applied the following standard to the Board's refusal to reopen: "The denial will be upheld unless it 'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group.'" *Id.* at 693 (quoting *Balani v. I.N.S.,* 669 F.2d 1157, 1161 (6th Cir.1982)). The BIA decision here was not defective on any of these grounds. It relied on three factually based reasons for denying the motion to reopen. First, on two occasions petitioner "overstayed, by many years, the period authorized for her admission into this country as a student." Second, petitioner "repeatedly ignored grants of voluntary departure in her case in order to prolong her unauthorized stay." Third, "on her most recent entry into this

country [petitioner], gained admission by failing to disclose her prior deportation from the United States."

Petitioner argues that the Board should have ignored the fact of her 1976 deportation and her omissions relative to her second entry because she was ignorant of her status and she was granted permission to reapply *nunc pro tunc.* This is a plea to ignore the facts of her blatant disregard of the INS orders. The reality is that petitioner has been in this country illegally and, except for six days, continuously since July 23, 1971. This, we think, bespeaks something other than ignorance of the applicable laws.

We agree with the government that *Rios-Pineda* controls this case and reach the same conclusion here as the Supreme Court did in that case: "This case, therefore, does not involve the unreasoned or arbitrary exercise of discretion. Here the BIA's explanation of its decision was grounded in legitimate concerns about the administration of the immigration laws and was determined on the basis of the particular conduct of the respondents." —— U.S. at ——, 105 S.Ct. at 2103.

Petitioner argues that *Rios-Pineda* is inapposite because it involved suspension of deportation, 8 U.S.C. § 1254(a)(1), not adjustment of status, *id.* § 1255, which is implicated here. We have held that

> this is a distinction without a difference. Both sections confer discretion on the Attorney General to grant extraordinary relief. Both leave substantial room for the Attorney General to define the substantive grounds for relief. Neither in terms requires any findings of eligibility before the Attorney General (or his designee) exercises his discretion to deny relief.

*LeBlanc v. I.N.S.,* 715 F.2d at 690.

We are not unmindful of the hardship that deportation means for petitioner and her children. Such hardship, however, does not erase or counterbalance the persistent disregard for INS orders exhibited by the petitioner. The hardship that petitioner and her children face are part of

daily life in Liberia. We do not think that she should be given priority over those presently in Liberia who have been waiting patiently for legal immigration visas.

*Affirmed.*