Josefina **GONZALEZ BATOON**, Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE**, Respondent.

No. 84–7082.

United States Court of Appeals,
Ninth Circuit.

Argued Jan. 21, 1986.

Submitted March 6, 1986.

Decided June 6, 1986.

D. Michael Eakin, Montana Legal Services Assoc., Billings, Mont., for petitioner.

Joseph F. Ciolino, Dawn MacPhee, Washington, D.C., for respondent.

Before BROWNING, Chief Judge, SCHROEDER, FLETCHER, PREGERSON, CANBY, BOOCHEVER, NORRIS, REINHARDT, BEEZER, WIGGINS, and BRUNETTI, Circuit Judges.

JAMES R. BROWNING, Chief Judge:

Josefina Gonzalez Batoon, a native and citizen of the Philippines, lawfully entered the United States as a visitor for pleasure in 1969. Her nonimmigrant visa expired on January 26, 1971. On August 7, 1970, prior to the expiration of her visa, Senator Mansfield introduced a private bill to adjust her status to that of a lawful permanent resident. S. 4199, 91st Cong., 2d Sess. (1970). She was granted a stay until August 4, 1971.[1] Meanwhile, deportation proceedings were instituted. A deportation hearing was held on March 11, 1971. Petitioner objected on the ground that because of the pendency of the private bill, her status was for Congress alone to determine. The objection was overruled. Petitioner was found deportable and granted voluntary departure. The Board of Immigration Appeals affirmed, stating: "The Service may as a matter of prosecutive discretion stay deportation ... pending consideration of a private bill, but this is not a matter of right on the part of the alien. Neither is it a duty on the part of the Service."

On January 25, 1971, in the next Congress, Senator Mansfield introduced a sec-

[1]. It is unclear from the record and the parties' stipulation why a stay of deportation was granted before an order of deportation was entered.

ond private bill to adjust petitioner's status. S. 99, 92d Cong., 1st Sess. (1971). On February 19, 1971, the Service advised petitioner that because the bill was being considered by Congress, she had been granted an extension of voluntary departure until February 1, 1973, or until Congress took adverse action on the bill. A private bill to adjust petitioner's status was introduced in each Congress between 1973 and 1977, the first two by Senator Mansfield, the last by Senator Melcher. S. 244, 93d Cong., 1st Sess. (1973); S. 257, 94th Cong., 1st Sess. (1975); S. 1621, 95th Cong., 1st Sess. (1977). In each instance the Service, acting *sua sponte*, extended the date of petitioner's voluntary departure. The last extension was to February 1, 1979 or until adverse action was taken on the pending bill.[2]

The parties have stipulated these extensions were granted pursuant to an understanding between the Service and the Chairpersons of the Judiciary Committees of the Congress, that when a private bill is introduced, and the appropriate Judiciary Committee requests a report from the Service, the subject of the private bill will be notified that he or she will be permitted to remain in the United States either under a stay of deportation or a grant of voluntary departure until February 1 of the first session of the next Congress. *See Roumeliotis v. INS,* 304 F.2d 453, 456 (7th Cir.1962); INS Operations Instruction 107.1, *reprinted in* 5 Immigration Law Service (LCP BW) 89–93 (1985).

On March 19, 1979, before the last extension had expired, petitioner moved to reopen the deportation proceeding to apply for suspension of deportation under section 244 of the Immigration and Nationality Act, 8 U.S.C. § 1254 (1982). The motion was granted. After a hearing, the Immigration Judge concluded petitioner had met the seven years continuous physical presence requirement and had demonstrated good moral character, but denied suspension of deportation on the ground petitioner

had failed to establish the third prerequisite for suspension of deportation under the statute: that deportation would result in extreme hardship. *See* 8 U.S.C. § 1254(a)(1). The Board affirmed on the same ground.

Petitioner filed a motion to reopen on April 5, 1982, based upon newly discovered evidence of extreme hardship: the affidavits of two doctors stating she suffered from hypertension and hyperthyroidism, and was likely to suffer severe psychiatric illness if deported. On June 4, 1982, the Board denied the motion to reopen, on the ground that adequate medical care was available in the Philippines. A panel of this court reversed and remanded because the Board in making the extreme hardship determination had failed to consider the adverse impact of deportation on petitioner's health independent of the adequacy of medical care in the Philippines. *See Batoon v. INS,* 707 F.2d 399 (9th Cir.1983).

On remand, the Board again denied the motion to reopen, but on two grounds. The Board again found petitioner had not made out a case of extreme hardship. The Board also held, however, that even if she had, the Board would deny reopening as a matter of administrative discretion. Petitioner again sought review in this court. A majority of the panel held a second remand was required because the Board had failed to obey the mandate of the panel to consider the consequences of deportation upon petitioner's health independent of the availability of adequate medical care in the Philippines.

The majority recognized the Supreme Court's intervening decision in *INS v. Rios-Pineda,* —— U.S. ——, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985), had held the Board could deny a motion to reopen in the exercise of its administrative discretion even if a *prima facie* case of extreme hardship, prerequisite to exercise of the Board's authority under the statute to suspend depor-

---

**2.** Senator Melcher introduced another private bill, S. 1491, 97th Cong., 1st Sess. (1981), but no extension was granted in connection with it. Since petitioner had acquired seven years' con-

tinuous physical presence before the introduction of this bill and its introduction did not prolong her stay, it is irrelevant to the disposition of this case.

tation, had been made out. *See id.,* 105 S.Ct. at 2102. However, a majority of the panel, relying on our pre-*Rios-Pineda* decision in *De La Luz v. INS,* 713 F.2d 545, 546 (9th Cir.1983) (per curiam), held the Board, in exercising its administrative discretion to deny reopening, must consider all favorable and unfavorable factors, including, apparently, those bearing upon whether deportation would cause extreme hardship. *Gonzalez-Batoon v. INS,* 767 F.2d 1302, 1303, n.2 (9th Cir.1985), *withdrawn for rehearing en banc,* 775 F.2d 1398, 1398 (9th Cir. 1985).

■ We took the case *en banc* to consider whether *Rios-Pineda* requires the Board's refusal to grant reopening in the exercise of its administrative discretion be reviewed independently of the correctness of the Board's ruling on the question of statutory eligibility. We believe it does. We also conclude, however, that judged by the grounds stated by the Board, denial of the motion to reopen this case on discretionary grounds was an impermissible exercise of the Board's discretion.

*Rios-Pineda* is explicit: "[I]f the Attorney General decides that relief should be denied as a matter of discretion, he need not consider whether the threshold statutory eligibility requirements are met." 105 S.Ct. at 2102; *cf. INS v. Bagamasbad,* 429

U.S. 24, 26–7, 97 S.Ct. 200, 201–02, 50 L.Ed.2d 190 (1976) (per curiam).

It is also clear, however, that the Supreme Court did not place "unreasoned or arbitrary exercise of discretion" by the Board beyond judicial review. *Rios-Pineda,* 105 S.Ct. at 2103; *see also Mattis v. INS,* 774 F.2d 965, 968 (9th Cir.1985). We therefore examine the reasons advanced by the Board for denying the motion to reopen as a matter of discretion.

■ The Board relied upon two principles in deciding to exercise its discretion to deny relief in this case: (1) the Board may exercise its discretion to deny relief when aliens have acquired the required seven years' presence by filing meritless appeals, *see Rios-Pineda,* 105 S.Ct. at 2102; and (2) the Board in its discretion may deny relief when eligibility has been acquired by illegally entering the country or failing to depart as promised. *See id.* at 2103.[3] Although under *Rios-Pineda* these are proper principles for the Board to consider in appropriate cases, the Board applied these principles to a case on which they have no bearing.

Petitioner did not acquire seven years' continuous physical presence in this country, as the Board put it, "by the filing of frivolous applications or appeals or by other evasive or dilatory actions." She remained in this country because the Service

3. The Board stated its reasons for denying relief as a matter of discretion as follows:

Where an alien's eligibility for relief from deportation has been acquired after a deportation order is in effect, only by the filing of frivolous applications or appeals or by other evasive or dilatory actions, the denial of a motion to reopen has been considered appropriate....

The respondent had been in the United States less than 2 years when the immigration judge's order of deportation became final upon dismissal of her appeal by the Board. By that time the respondent had already had two unsuccessful private bills introduced in Congress on her behalf. Although she was granted the privilege of voluntary departure, she failed to depart from this country and continued to submit additional private bills to Congress. After they also proved to be unsuccessful and she had accumulated 7 years of residence in the United States, she was per-

mitted to reopen her deportation proceedings to apply for suspension of deportation. Although her application was denied by the immigration judge, he did, however, reinstate his grant of voluntary departure. The respondent again chose to remain in this country and filed another motion to reopen more than 11 years after she had been ordered deported.

Almost all of the respondent's equities were acquired after she was subject to a final order of deportation. Consequently, it is the Board's position that they should not be accorded great significance.... To hold otherwise would only encourage aliens to remain in the United States in disregard of a deportation order in order to acquire additional equities. Therefore, weighing all of the equities identified by the respondent in her motion against the adverse factors mentioned above, we conclude that the respondent's motion to reopen should be denied in the exercise of discretion.

extended the date fixed by the Service for her voluntary departure. The Service ordered the first of these extensions before petitioner's visa had expired. The extensions were not granted on petitioner's motion—indeed, the Board rejected her personal request through counsel to suspend deportation proceedings pending consideration by Congress of private bills to adjust her status. The Service acted pursuant to its own agreement with the Judiciary Committees of Congress following introduction of legislation by members of the United States Senate and requests from the Senate Judiciary Committee for reports on that legislation.

■ The Board commented that "although [petitioner] was granted the privilege of voluntary departure, she failed to depart." But the Service repeatedly and unilaterally extended petitioner's voluntary departure date. She has never overstayed a grant of voluntary departure or disobeyed an order of deportation. It is irrational for the Board to refuse to reopen on the ground that an alien whose departure date it has extended should have departed before the newly scheduled departure date arrived.

The Board implies the introduction of private legislation, particularly unsuccessful private legislation, is equivalent to filing frivolous appeals. The Board's previous position was to the contrary. The Board's usual practice, to which we have found no reported exception, had been to count time accrued during the pendency of private legislation towards satisfaction of the statutory standard. *See Asimakopoulos v. INS*, 445 F.2d 1362, 1364 (9th Cir. 1971); *Ramos v. INS*, 695 F.2d 181, 182 n. 2, 188 (5th Cir.1983); *Pelaez v. INS*, 513 F.2d 303, 304 (5th Cir.1975) (per curiam). Indeed, the Board granted petitioner's previous motion to reopen even though her statutory eligibility had been acquired by the passage of time during the pendency of private bills.

■ The Board gave no reason for its deviation from past practice. None is evident. There is a difference between frivolous appeals and unsuccessful private bills. It is within the Board's competence to determine whether arguments advanced in administrative or judicial proceedings pursuant to a statute the Board is charged with administering are meritless. But the Board is in no position to judge whether a private bill may have merit in the minds of legislators. A bill may fail of passage for many reasons unrelated to its merits. Even successful private bills are meritless if viewed against existing statutory standards, because the purpose of legislation, unlike litigation, is to afford relief to persons whose claims would fail under existing law.

The Board mistakenly states petitioner "continued to submit additional private bills to Congress," and that granting her motion to reopen "would only encourage aliens to remain in the United States in disregard of a deportation order in order to acquire additional equities." Petitioner did not "submit private bills" to prolong her stay. Bills may be introduced only by members of Congress. Granting petitioner's motion to reopen would not in itself "encourage aliens to remain in the United States in disregard of a deportation order." Petitioner has never disregarded a deportation order or any other order of the Service. Whether she will remain in this country does not depend upon her will or any action she may take—it depends upon the concurrence of actions by others she can neither initiate nor control: the introduction of legislation by a member of Congress, a request by the relevant Congressional Committee for a report on the bill, and the continued policy of the Service to stay deportation during the pendency of legislative consideration of the bill.

*Rios-Pineda* reaffirmed the "broad discretion" of the Attorney General and his delegates in reviewing petitions for reopening "to consider [aliens'] individual conduct and distinguish among them on the basis of the flagrancy and nature of their violations." *Id.*, 105 S.Ct. at 2103. The Court noted the aliens in *Rios-Pineda* paid a professional smuggler to transport them into

the country and one of them dishonored his promise to depart voluntarily; and the Court upheld the Board's discretion to distinguish between an alien

> who enters the country legally, staying beyond the terms of a visa, and one who enters the country without inspection. ... Furthermore, the Attorney General can certainly distinguish between those who, once apprehended, comply with the laws, and those who refuse to honor previous agreements to report for voluntary departure.

*Id.* The petitioner in this case entered the country legally, as a visitor for pleasure, remained here by virtue of a stay entered by the Service and, as conceded by the Department of Justice, broke no promise of voluntary departure.

The Court held in *Rios-Pineda* that denial of the motion to reopen in that case did not involve "the unreasoned or arbitrary exercise of discretion," because the Board's "explanation of its decision was grounded in legitimate concerns about the administration of the immigration laws and was determined on the basis of the particular conduct of respondents." *Id.* In the present case, the Board's explanation of its decision is not grounded in legitimate concerns about the administration of the immigration laws. Contrary to the Board's assertion, granting petitioner's motion to reopen will not encourage others to use meritless appeals to remain in this country. *Cf. Rios-Pineda,* 105 S.Ct. at 2101. Nor will granting her petition encourage individuals to flout immigration entry laws or deportation orders. *Cf. id.* at 2103.

■ Because the Board misapplied the principles upon which it purported to act and failed to state valid reasons for its action, we have no basis for concluding that the Board's action reflected legitimate concerns in the enforcement of the immigration laws. The Board's denial of reopening in the exercise of its discretion was therefore arbitrary and unreasoned and cannot be sustained.

■ Under *Rios-Pineda,* the Board may reject a petition to reopen for suspension of

deportation on discretionary grounds without considering whether the alien is eligible for relief under 8 U.S.C. § 1254(a)(1). We hold that in this case, the Board's exercise of discretion was arbitrary and unreasoned.

We took this case only to review the effect of *Rios-Pineda* on the consideration of the Board's discretionary ground for denying relief. We return this case to the three-judge panel to reconsider the balance of the issues raised by the parties in light of this opinion and to enter an appropriate judgment. *See United States v. DeBright,* 730 F.2d 1255, 1260 (9th Cir.1984) (en banc); *Rodgers v. Watt,* 722 F.2d 456, 461 (9th Cir.1983) (en banc).