**Herman SALDANA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**Nos. 84–7118, 84–7549.**

United States Court of Appeals,
Ninth Circuit.

June 30, 1986.

Heriberto Gonzales, Los Angeles, Cal., for petitioner.

Dzintra Janavs, Los Angeles, Cal., for respondent.

DISSENT FROM DENIAL OF COURT
TO CONSIDER THIS CASE
EN BANC

SNEED, Circuit Judge, with whom KENNEDY, ANDERSON, HALL, WIGGINS, BRUNETTI, and KOZINSKI, Circuit Judges, join, dissenting from denial of rehearing en banc:

This case takes another large step toward limiting the Board of Immigration Appeals' (BIA) discretion in deciding motions to reopen on the ground of extreme hardship. Because I believe the opinion goes beyond our precedents and is in conflict with those of the Supreme Court, I

---

dissent from the denial of rehearing en banc.

In this dissent, I do three things. First, I describe the faults the panel majority found with the BIA's disposition and assess those faults within the framework of our prior cases. Then, I examine the distinctions the panel majority drew between this case and the Supreme Court decisions in *INS v. Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam), and *INS v. Rios-Pineda,* —— U.S. ——, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985). Finally, I discuss the methodology of the panel's majority opinion.

The opinion identifies three faults with the BIA's disposition of this motion. First, the BIA "gave no recognition to the trauma Saldana's wife, child, and step-children would experience" if the INS deported Saldana. 762 F.2d at 828. This is not true. The BIA did examine the psychiatric report, as even the panel's opinion reflects. *See id.* The BIA obviously concluded that the report only confirmed an ordinary common-sense conclusion: a forced separation of one spouse from the other spouse and children usually causes severe emotional anguish. Our past cases have done no more than require that the BIA address similar psychiatric reports. *See, e.g., Gonzales-Batoon v. INS,* 707 F.2d 399 (9th Cir.1983). The existence of such reports does not require reopening. Our cases have acknowledged that the equities arising from marriages entered into under contemplation of deportation do *not* require the BIA to grant a motion to reopen. *See, e.g., Ahwazi v. INS,* 751 F.2d 1120, 1123 (9th Cir.1985). The majority's analysis strongly suggests that this type of situation necessarily constitutes extreme hardship and that the BIA should find the existence of extreme hardship more easily. Aside from the fact that we are not empowered to act as the BIA, to make "extreme hardship" mean "substantial discomfort" is to debase the currency of our profession—the English language.

Second, the panel majority points out a mistake of fact in the BIA's opinion. The BIA described Saldana's present wife as divorced from her first husband. The BIA failed to point out that, after the first husband's divorce from Saldana's present wife, the first husband was murdered. *See* 762 F.2d at 828. Few BIA decisions would survive our review if we reversed each time an arguably relevant fact was omitted. The BIA's decision would not have been any different had it noted the death of Saldana's wife's first husband. The divorce preceded the murder. The wife did not lose her first husband because of an assassin's attack. The loss was by way of divorce.

Third, the panel majority chides the BIA for discounting the hardship likely to ensue upon deportation because Saldana's marriage took place at a time when he knew he was subject to deportation. It does not argue that the BIA could not conclude that the parties' hardship would be less because they married with knowledge of Saldana's immigration status. This court has recognized the legitimacy of such a conclusion. *See, e.g., Ahwazi v. INS,* 751 F.2d 1120, 1123 (9th Cir.1985). Instead, the panel argues that the BIA is to be faulted because it did not express this conclusion clearly enough. This is nit-picking and is not consistent with our role of reviewing the decisions of the BIA. Although the panel majority can cite *Prapavat v. INS,* 662 F.2d 561 (9th Cir.1981) (per curiam), to support its supervision of BIA draftmanship, there are a number of cases in which panels of this circuit have refused to employ such scrutiny. *See, e.g., Ahwazi; Vasquez v. INS,* 767 F.2d 598 (9th Cir.1985); *Israel v. INS,* 710 F.2d 601 (9th Cir.1983); *Hamid v. INS,* 648 F.2d 635 (9th Cir.1981).

In a recent amendment to *Saldana, see* 785 F.2d at 650, the panel majority attempts to respond to Judge Goodwin's dissent, 762 F.2d at 829–30. Because Judge Goodwin has accurately portrayed the tenor of the Supreme Court's opinion in *Wang v. INS,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam), *reversing* 622 F.2d 1341 (9th Cir.1980) (en banc), I will not repeat his points. My effort is directed

toward the majority's efforts to distinguish *Wang* and *Rios-Pineda*.

First, it is asserted that *Wang* differs because there "the BIA had 'considered the facts alleged.' " 785 F.2d at 650 (quoting *Wang*, 450 U.S. at 144, 101 S.Ct. at 1031). As we have seen, the only fact the BIA failed to notice here was the murder of the first husband of the current spouse of the petitioner after their divorce. The majority's other two criticisms of the BIA opinion contribute nothing toward distinguishing *Wang*. The BIA considered the psychiatric report as well as the circumstances surrounding Saldana's current marriage. Perhaps the majority· felt the BIA considered too much, not too little.

Second, the majority relies on the Supreme Court's characterization of *Wang*, as not a "particularly unusual case." 450 U.S. at 145, 101 S.Ct. at 1031. It sees *Saldana*, unlike *Wang*, as a " 'particularly unusual case.' " 785 F.2d at 650. The judges of the majority are much too experienced not to have previously encountered cases quite similar to this one.

Third, the panel majority distinguishes *Rios-Pineda*, 105 S.Ct. 2098 (1985), by noting that "[w]e do not attempt to impose any particular definition of hardship on the BIA." 785 F.2d at 650. Perhaps not, but the majority does wish to narrow the discretion of the Attorney General. The Supreme Court has taken great pains to make it clear to us that Congress has bestowed the authority to regulate immigration upon the Attorney General. He has delegated that authority in turn to the INS. We should recognize these juridical facts. To repeat, we are not the BIA.

Finally, a comment on the methodology employed by the majority is necessary. Discretion effectively can be eliminated by holding that under certain specific circumstances discretion must be exercised in one, and only one, manner. It also can be reduced by erecting procedural rules governing the manner in which it is to be exercised. Procedural rules, of course, need not reduce discretion. In their benign form they merely assure that the determination was the result of a genuine exercise of discretion and not the consequence of whim or caprice. In a more restrictive form they can substantially channel the direction to be taken by the discretionary act. For example, the inadmissibility of certain facts and the illegitimacy of certain concerns can function in this manner.

Operating in a somewhat similar manner are rules that require that the process by which discretion is exercised be set forth in some detail. Such rules required that discretion's tracks be made visible to the reviewing authority. Each track can then be examined to determine whether it is the track that true discretion would have left. As the required number of tracks increases the greater the chance that the agency clothed with discretion either will omit a track or leave a false one with the result that all steps must be retraced by the agency.

The majority obviously has fashioned rules of this latter type. The issue is whether it has gone too far. I strongly believe that it has. It has passed beyond insisting on a sensible number of tracks that will establish that true discretion was exercised, and entered upon the task of providing the narrow pathway down which an agency must walk. Discretion so confined ceases to be true discretion. The agency in which discretion once was vested by this means becomes the puppet of the court. Congress did not intend this result.

Our tendency in this direction first emerged clearly in *Prapavat v. INS*, 662 F.2d 561 (9th Cir.1981) (per curiam). Although the idea lay dormant for several years, it recently has become a staple of our jurisprudence; in the last twelvemonth we have reversed the BIA on this ground three times. *See Saldana; Figueroa-Rincon v. INS*, 770 F.2d 766 (9th Cir.1985); *Gonzales-Batoon v. INS*, 767 F.2d 1302 (9th Cir.1985); *accord Sullivan v. INS*, 772 F.2d 609, 611–13 (9th Cir.1985) (Pregerson, J., dissenting).

Nor is this the only front on which we are limiting the Attorney General's options. In *Israel v. INS*, 785 F.2d 738 (9th Cir.

1986), we reversed the BIA because we could not find a distinction between the facts of *Israel* and the facts of an earlier case the BIA had decided differently. Similarly, in *Batoon v. INS*, 791 F.2d 681 (9th Cir.1986) (en banc), we overturned a BIA decision because the "Board gave no reason for its deviation from its past practice." 791 F.2d at 685. In *Hernandez-Ortiz v. INS*, 777 F.2d 509 (9th Cir.1985), we flatly held that the Attorney General has no discretion to deny a motion to reopen for withholding of deportation when the petitioner has presented a prima facie case for withholding of deportation.

Finally, we have developed a pattern of reviewing the findings of fact of immigration judges with a very critical eye. For example, we have sometimes substituted our judgment as to the facts demonstrated by the record for the judgment of the Immigration Judge before whom the record was created. Thus, we have established a rule that prevents immigration judges from rejecting uncorroborated claims. *See, e.g., Bolanos-Hernandez*, 767 F.2d 1277, 1284–85 (9th Cir.1985); *Canjura-Flores v. INS*, 784 F.2d 885 (9th Cir.1985). Then, we have coupled this rule with a careful scrutiny of credibility findings. *See, e.g., Damaize-Job v. INS*, 787 F.2d 1332 (9th Cir.1986); *Zavala-Bonilla v. INS*, 730 F.2d 562 (9th Cir. 1984). We are, in truth, approaching de novo review in this area, as in many others. *See, e.g., United States v. McConney*, 728 F.2d 1195 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

This course is not only contrary to the Supreme Court precedents and the immigration statutes, but reflects a hubris that all find outrageous when it exists on the part of those with whom we disagree. Long experience teaches that a judicial system functions better when self-righteous arrogance is firmly restrained by both self and rules. Supine acceptance of the will of immigration officials is not the alternative I urge; rather, it is to hew to the course set for us by the Supreme Court. I do not think the panel majority did that in this case.

Accordingly, I dissent.