SCHROEDER, Circuit Judge.
 

 Petitioner Aliakbar Fazelihokmabad petitions for review of the Board of Immigration Appeal (BIA)’s denial of his motions to reopen. In the motions he sought to apply for adjustment of status, pursuant to section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255, based on his recent marriage to a United States citizen, and also for suspension of deportation based on extreme hardship pursuant to section 244(a) of the Act, 8 U.S.C. § 1254(a).
 

 Petitioner is a citizen of Iran who entered the United States on a student visa in January 1977. In 1979, he was tardy in filing a routine request for extension of time of permitted stay. Therefore, his student status was not reinstated and he was ordered deported on May 22, 1980. He appealed to the BIA, which dismissed his appeal. Petitioner then sought review in this court on March 17, 1981. That appeal was dismissed for lack of prosecution, apparently due to his counsel’s failure to contact him at the correct address.
 

 In June, 1984, the Immigration Service contacted petitioner by mail and ordered petitioner to surrender for deportation on July 11, 1984.
 

 Petitioner married Laurie Thoms, an American citizen, on July 9, 1984. According to affidavits of petitioner’s friends, the couple had been planning to marry for several months before the marriage took place. When petitioner and his wife went to the Immigration Service on October 4, 1984, to apply for permanent residence, the INS took petitioner into custody based on the deportation order for deportation July 11, 1984.
 

 Petitioner’s wife then filed an immediate relative visa petition based on her United States citizenship, and petitioner submitted motions to reopen the deportation proceedings in order to apply for the adjustment of status and for suspension of deportation.
 

 In his motions to reopen, petitioner submitted evidence aimed at establishing three
 
 *1464
 
 principal matters: first, that his marriage was bona fide; second, that responsibility for the lack of prosecution of his earlier appeal to this court lay with his former attorney and not with him; and finally, that he and his wife would endure extreme hardship if he were deported to Iran, because of the conditions in that country and because of his practical inability to obtain the visa to which his marriage would entitle him.
 

 With respect to the marriage, the petitioner submitted his own affidavit and those of his wife, friends, and a neighbor, attesting to the strength and commitment of the marriage. He also submitted photographs, the marriage announcement, his life insurance policy giving his wife’s name as beneficiary, and a letter from his bank confirming the couple’s joint account. In addition, other affidavits stated that the couple had lived together for several months before their marriage and had begun to plan their marriage before petitioner received the order to surrender to the INS.
 

 On the matter of his 1981 appeal to this court which was dismissed for lack of prosecution, the petitioner submitted his detailed affidavit. It explained that when petitioner’s original attorney in the appeal gave up his immigration practice, the case was assumed by another attorney. That attorney tried to communicate with petitioner by writing to the wrong address. The appeal was dismissed after that attorney advised this court that he could not locate the petitioner.
 

 Petitioner’s evidence on hardship covered several areas. It documented profound social changes in Iran that occurred since petitioner left as a teenager in 1977, and it explained the detrimental effect life there would have on him in view of his adoption of American social practices and his lack of familiarity with the fundamentalist Islamic religion now practiced in Iran. The evidence also showed the hardship that his wife, as an American, would suffer as a social outcast if she were to accompany him to Iran. Finally, the evidence showed that because there was no United States consulate in Iran to process an immigrant visa, and because petitioner would be subject to two years of mandatory Iranian military service, he would not be able to leave Iran for at least two years to find a consulate which could process his immigrant visa application. There is no dispute that as the spouse of an American, he would be legally entitled to reenter this country.
 
 See
 
 section 201 of the Immigration and Nationality Act, 8 U.S.C. § 1151. As a practical matter, however, if deported to Iran he would not be able to obtain the visa for at least two years.
 

 The BIA denied petitioner’s motions to reopen. Without discussing any of the affidavits, the Board concluded that the motion to reopen for adjustment of status based on the marriage should be denied in the exercise of its discretion, because the marriage was so recent and because petitioner had been negligent in prosecuting his appeal to this court in 1981.
 

 In exercising its discretion to deny the motion to reopen to apply for suspension of deportation because of extreme hardship, the Board again relied on petitioner’s negligence in prosecuting the earlier appeal. The Board also rejected the claim on the merits, concluding that petitioner faced no permanent prospect of hardship in view of his marriage to a United States citizen. The Board observed that petitioner possesses a “ready means to lawfully and permanently return to this country, if he so chooses, on account of his marriage to a United States citizen.” The Board did not discuss the difficulties the petitioner would encounter in obtaining such a visa because of the lack of a consulate in Iran and because of Iranian conscription requirements.
 

 We review the BIA’s denial of petitioner’s motions to reopen for abuse of discretion.
 
 INS v. Rios-Pineda,
 
 — U.S. —, 105 S.Ct. 2098, 2102-03, 85 L.Ed.2d 452
 
 *1465
 
 (1985);
 
 Vasquez v. INS,
 
 767 F.2d 598, 600 (9th Cir.1985). The BIA’s denial of a motion to reopen will be upheld unless it is arbitrary, irrational, or contrary to law.
 
 Gonzalez-Batoon v. INS,
 
 791 F.2d 681, 684 (9th Cir.1986);
 
 Ahwazi v. INS,
 
 751 F.2d 1120, 1122 (9th Cir.1985);
 
 Ramon-Sepulveda v. INS,
 
 743 F.2d 1307, 1309 (9th Cir.1984). In denying a motion to reopen, the BIA must weigh both favorable and unfavorable factors,
 
 De La Luz v. INS,
 
 713 F.2d 545, 546 (9th Cir.1983), and the BIA must state its reasons when weighing equities and denying relief.
 
 See Prapavat v. INS,
 
 662 F.2d 561, 562 (9th Cir.1981).
 

 In a recent
 
 en banc
 
 opinion, we held that the Board exercised its discretion in an arbitrary and unreasoned fashion when it “misapplied the principles upon which it purported to act and failed to state valid reasons for its action____”
 
 Gonzalez-Ba-toon,
 
 791 F.2d at 686. In that case we reviewed the effect of the Supreme Court’s decision in
 
 Rios-Pineda
 
 on our review of the Board’s exercise of its discretion in denying petitions to reopen for discretionary relief. We decided that we must look to whether the Board’s explanation of its decision was grounded in “legitimate concerns about the administration of the immigration laws ____”
 
 Id.
 
 (quoting
 
 INS v. Rios-Pineda,
 
 105 S.Ct. at 2103);
 
 see also Aviles-Torres v. INS,
 
 790 F.2d 1433, 1437 (9th Cir.1986). In
 
 Gonzalez-Batoon
 
 we specifically held that the Board acted irrationally when it misstated the record and accused the petitioner of overstaying a grant of voluntary departure, when in fact she had not done so.
 

 The BIA is not required to consider whether the threshold statutory eligibility requirements are met if it decides that relief should be denied as a matter of discretion,
 
 INS v. Bagamasbad,
 
 429 U.S. 24, 97 S.Ct. 200, 50 L.Ed.2d 190 (1976);
 
 Vasquez v. INS,
 
 767 F.2d 598, 600 (9th Cir.1985). Yet when it weighs the equities presented in the petition, it cannot act upon assumptions unsupported in the record and contradicted by affidavits that are not inherently unbelievable.
 
 See Mattis v. INS,
 
 774 F.2d 965 (9th Cir.1985);
 
 Aviles-Torres,
 
 790 F.2d at 1436.
 

 In applying these principles to the case before us, we must conclude that the Board acted arbitrarily and irrationally in denying the petitions for reopening. Each of the factors that the Board relied upon in denying the motions was based upon mere assumptions which were contradicted by the petitioner’s evidence.
 

 The timing of the petitioner’s marriage in relation to the deportation order clearly was a substantial factor in the Board’s decision to deny the petition for reopening for adjustment of status based upon that marriage. The Board gave the marriage little weight as an equitable factor “because of the suspicion that such a marriage may have been contracted in order to avoid deportation.” The Board simply ignored the wealth of evidence that the marriage was bona fide. It gave no reasons for doing so, as we have indicated it should.
 
 See Israel v. INS,
 
 785 F.2d 738, 742 & n. 8 (9th Cir.1986). The evidence was not refuted and was not inherently unbelievable.
 

 We have held squarely that the Board’s failure to consider such evidence is an abuse of discretion.
 
 Mattis v. INS,
 
 774 F.2d at 968-69.
 
 See also Aviles-Torres v. INS,
 
 790 F.2d 1433, 1436 (9th Cir.1986);
 
 De La Luz v. INS,
 
 713 F.2d at 546;
 
 Reyes v. INS,
 
 673 F.2d 1087, 1090 (9th Cir.1982). These cases establish that the Board must accept as true the facts stated in affidavits for reopening unless the affidavits are inherently unbelievable. Petitioner’s affidavits are not.
 

 Similarly, without discussing the evidence submitted to the contrary, the Board asserted that the petitioner was negligent in prosecuting his appeal to this court. His affidavit indicates otherwise.
 

 In connection with the petitioner’s failure to surrender to INS officials after his marriage, the BIA stated only that he had “not adequately explained his failure” to surrender. He stated in his affidavit, however, that he had been told that the order would not be effective after his marriage, and that he therefore did not knowingly violate any order of the Service. His subsequent conduct and that of his wife in seeking
 
 *1466
 
 permanent resident status for him was fully consistent with his affidavits.
 

 In dealing with the merits of the hardship claim, the Board recognized that the petitioner would endure hardship in Iran, but mistakenly discounted that hardship on the theory that the petitioner, upon deportation, easily could reenter this country because of his marriage. The problem that the Board did not address, and that the government before us does not dispute, is that the petitioner, once deported, could not obtain the visa because of conditions in Iran, including the lack of an American consulate.
 

 The Board’s assumption with regard to lack of hardship, like assumptions underlying the other reasons given for denying reopening, is mistaken. It does not provide a rational basis for denying reopening. The Board thus “misapplied the principles upon which it purported to act and failed to state valid reasons for its action.”
 
 Gonzalez-Batoon,
 
 791 F.2d at 686. Therefore, “the denial of reopening in the exercise of discretion ... cannot be sustained.”
 
 Id.
 

 The BIA’s decision is reversed and the matter remanded.