26 F.3d 130
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Angelina Mapalad ERCIA, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 92-70808.
 United States Court of Appeals, Ninth Circuit.
 Submitted June 9, 1994.*
Decided June 13, 1994.
 
 Before: D.W. NELSON, BEEZER, and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Angelina Mapalad Ercia ("Petitioner") petitions for review of a decision of the Board of Immigration Appeals ("BIA" or "Board") that denied her request to reopen the deportation proceedings against her for the purpose of permitting her to file an application for asylum and withholding of deportation. For the reasons stated below, we deny the petition for review.
 
 I. Factual and Procedural Background
 
 3
 Petitioner is a native and citizen of the Philippines. She entered the United States on a nonimmigrant visa in June 1983. On September 7, 1984, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause. The INS contended that Petitioner was deportable under section 241(a)(2) of the Immigration and Nationality Act ("Act"), 8 U.S.C. Sec. 1251(a)(2), for having overstayed her visa.
 
 
 4
 Deportation hearings were held in late September 1984, during which petitioner conceded her deportability but filed an application for asylum, withholding of deportation, and voluntary departure. Petitioner asserted that, if she returned to the Philippines, she would be persecuted because of her involvement in a Catholic student's organization that engaged in anti-Marcos demonstrations. In addition, she claimed that the Marcos regime would persecute her because her father was a politician who supported Senator Benito Aquino, and because her nephew was arrested after taking part in a violent anti-Marcos demonstration, after which he was beaten by the authorities and then died of a heart attack.
 
 
 5
 The immigration judge denied the application for asylum and withholding of deportation but granted Petitioner voluntary departure. Petitioner then filed a notice of appeal to the BIA. In January 1987, however, Petitioner made a motion to withdraw her appeal in the wake of the overthrow of the Marcos regime. The BIA granted the motion in June 1987.
 
 
 6
 Petitioner then filed a motion to reopen her deportation proceedings on March 18, 1988. Pointing to the overthrow of the Marcos regime, and newspapers articles that discussed the instability of the new democratic government and the activities of pro-Marcos loyalist rebels, Petitioner contended that she had satisfied her burden of presenting new evidence that was material to her asylum claim. In addition, she claimed that she would experience political persecution if returned to the Philippines from two sources. First, Petitioner asserted that if the pro-Marcos faction returned to power, she would suffer persecution because of her and her family's anti-Marcos activities. Second, Petitioner claimed that she would be persecuted by communist insurgents (the "NPA"), who she contended were active in the area where her family lived, because of her "strong anti-communist sentiment and the political activities of [her] family." Admin.Rec. at 18.
 
 
 7
 The BIA denied the motion to reopen for two reasons. First, the Board concluded that Petitioner had failed to establish a prima facie case for asylum. Citing the Country Reports on Human Rights Practices for 1991, which reported that the NPA targeted primarily former insurgents who had surrendered to the government and managers involved in labor disputes, the Board concluded that there was no evidence that the NPA would single Petitioner out for her political opinions or those of her family. Additionally, the Board concluded that Petitioner's "fear of persecution at the hands of loyalists of the late Ferdinand Marcos [was] unfounded" because the Philippines had a "republican form of government with a democratically elected president and a bicameral legislature." Second, the BIA found Petitioner's asylum claim "disingenuous" because the departure of the Marcos regime "represents, if anything, an improvement in her situation insofar as her fear of the former regime is concerned." Consequently, the BIA also "denied [the motion] as a matter of discretion." Admin.Rec. at 3.
 
 
 8
 This petition for review followed. We have jurisdiction pursuant to 8 U.S.C. Sec. 1105a.
 
 II. Standard of Review
 
 9
 A motion to reopen can be granted only when " 'the evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing.' " INS v. Doherty, 112 S.Ct. 719, 724 (1992) (quoting 8 C.F.R. Sec. 3.2 (1987)). In addition, the alien must establish prima facie eligibility for the relief sought. See, e.g., INS v. Rios-Pineda, 471 U.S. 444, 449 (1985); Platero-Reymundo v. INS, 807 F.2d 865, 867 (9th Cir.1987). Although these two requirements are prerequisites for granting a motion to reopen, they do not guarantee it. In addition, "the BIA may leap ahead, as it were, over the two threshold concerns (prima facie case and new evidence/reasonable explanation), and simply determine that even if they were met, the movant would not be entitled to the discretionary grant of relief." INS v. Abudu, 485 U.S. 94, 105 (1988).
 
 
 10
 The denial of a motion to reopen is reviewed under the abuse of discretion standard regardless of the type of relief sought. See Doherty, 112 S.Ct. at 725; accord Padilla-Agustin v. INS, Nos. 92-70611, 93-70351, slip op. 3919, 3926 (9th Cir. Apr. 21, 1994). When the Board relies on its underlying discretion in denying the motion, the court may reverse only if the BIA's action was "unreasoned or arbitrary." Gonzalez-Batoon v. INS, 791 F.2d 681, 684 (9th Cir.1986) (en banc) (internal quotations omitted). The Board "cannot act upon assumptions unsupported in the record and contradicted by affidavits that are not inherently unbelievable." Fazelihokmabad v. INS, 794 F.2d 1470, 1473 (9th Cir.1986), vacated on other grounds, 485 U.S. 930 (1988) (vacated and remanded in light of Abudu ); accord Maroufi v. INS, 772 F.2d 597, 600 (9th Cir.1985).
 
 
 11
 To establish eligibility for asylum, an alien must demonstrate that she qualifies as a "refugee" within the meaning of 8 U.S.C.A. Sec. 1101(a)(42)(A) (West Supp.1993). A refugee is defined as any person who is unable or unwilling to return to her country of origin "because of persecution or a well-founded fear of persecution on account of ... political opinion." Id. The "well-founded" fear standard has both objective and subjective components. The subjective component may be satisfied by "an applicant's credible testimony that he genuinely fear persecution." Acewicz v. INS, 984 F.2d 1056, 1061 (9th Cir.1993) (citing Berroteran-Melendez v. INS, 955 F.2d 1251, 1256 (9th Cir.1992)). "The objective component requires a showing by 'credible, direct, and specific evidence of facts supporting a reasonable fear of persecution' " on the relevant ground." Id. (quoting Rodriguez-Rivera v. INS, 848 F.2d 998, 1002 (9th Cir.1988) (per curiam)). Factual determinations underlying the Board's determination are reviewed under the substantial evidence standard. See INS v. Elias-Zacarias, 112 S.Ct. 812, 815 (1992); Shirzai-Parsa v. INS, 14 F.3d 1424, 1427 (9th Cir.1994); 8 U.S.C.A. Sec. 1105a(a)(4) (West Supp.1993). We may reverse the BIA only if " 'the evidence presented ... was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." Shirazi-Parsa, 14 F.3d at 1427 (quoting Elias-Zacarias, 112 S.Ct. at 815). The legal conclusions of the Board are reviewed de novo. Abedini v. INS, 971 F.2d 188, 190-91 (9th Cir.1992).
 
 III. Analysis
 
 12
 We agree with the BIA that Appellant failed to establish a prima facie case of eligibility for asylum.
 
 
 13
 Petitioner's claim that she faces a likelihood of persecution from anti-Marcos rebels fails in its very premise. In her papers presented to the BIA, Petitioner did not contend that the rebels would target her in their role as insurgents, but rather, that she would be persecuted if "a faction loyal to Marcos is returned to power." Admin.Rec. at 17. However, the various newspaper articles that she attached to her motion to reopen do not demonstrate that an overthrow the democratic regime currently in place in the Philippines is likely. Because we can reverse the BIA's determination only if the evidence "compels " a contrary conclusion, Elias-Zacarias, 112 S.Ct. at 815 n. 1 (emphasis in original), we reject Petitioner's contention that any fear based upon the return of Marcos loyalists to power is objectively well-founded.
 
 
 14
 In her brief to this court, Petitioner raised for the first time the claim that she will be targeted by the Marcos loyalists for her political beliefs whether or not the loyalists return to power. See Brief for Petitioner at 15-16. This claim was not presented to the Board. Consequently, Petitioner failed to exhaust her administrative remedies with respect to this issue and we lack jurisdiction to consider it in this appeal. See, e.g., Florez-De Solis v. INS, 796 F.2d 330, 335 (9th Cir.1986); see also Vargas v. United States Dep't of Immigration, 831 F.2d 906, 907-08 (9th Cir.1987) ("Failure to raise an issue [in front of] the BIA constitutes failure to exhaust remedies with respect to that question and deprives this court of jurisdiction to hear the matter."); 8 U.S.C. Sec. 1105a(c) (1988).
 
 
 15
 We also reject the contention that the BIA erred in concluding that Petitioner had not met her burden of demonstrating that the NPA would target her for her political beliefs or beliefs that the rebels might impute to her. Petitioner presented no evidence of her "anti-communist" sentiments, and she did not testify that she had such views at her original deportation hearing. We therefore doubt their veracity. Moreover, even assuming arguendo that Petitioner possesses "anti-communist" beliefs, she has presented no evidence that the rebels are likely to learn of such beliefs, or are likely to impute such beliefs to her. In addition, Petitioner has failed to adduce any evidence that the rebels target persons, like herself, who took part in demonstrations against the Marcos regime or had relatives who were active political opponents of that regime, or that the rebels are likely to find out about her activities, or those of her father or her nephew. Consequently, as with her claim of persecution by the pro-Marcos loyalists, Petitioner reasonably may fear that she would be harmed by the rebels. However, she has not demonstrated that "the guerrillas will persecute [her] because of [any] political opinion, rather than [for some other reason]." Elias-Zacarias, 112 S.Ct. at 816 (emphasis in original); see also Abedini, 971 F.2d at 192 & n. 1 (noting that the Petitioner had the burden of demonstrating that the persecutors would single him out "for unique punishment because of his actually-held or perceived-to-be held" political beliefs).
 
 
 16
 We therefore conclude there is no basis for concluding that the Board erred in finding that Appellant had not established a prima facie case of eligibility for asylum. Petitioner's inability to establish her eligibility for asylum also necessarily renders her ineligible for withholding of deportation. See, e.g., Acewicz, 984 F.2d at 1062. Because Petitioner is not eligible for a form of relief sought, there is no basis for concluding the Board abused its discretion in denying the motion to reopen.[1]
 
 
 17
 Therefore, the petition for review is DISMISSED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 We therefore do not address whether the BIA abused its discretion by holding that it would deny the motion to reopen as "disingenuous" because the fall of Marcos could only mark "an improvement in [Petitioner's] situation insofar as her fear of the former regime is concerned." Admin.Rec. at 3