# Legislation Denying Citizenship at Birth to Certain Children Born in the United States

A bill that would deny citizenship to children born in the United States to certain classes of alien parents is unconstitutional on its face.

A constitutional amendment to restrict birthright citizenship, although not technically unlawful, would flatly contradict the Nation's constitutional history and constitutional traditions.

December 13, 1995

STATEMENT BEFORE THE SUBCOMMITTEES
ON IMMIGRATION AND CLAIMS
AND
ON THE CONSTITUTION
OF THE HOUSE COMMITTEE ON THE JUDICIARY

Throughout this country's history, the fundamental legal principle governing citizenship has been that birth within the territorial limits of the United States confers United States citizenship. The Constitution itself rests on this principle of the common law.[1] As Justice Noah Swayne wrote in one of the first judicial decisions interpreting the Civil Rights Act of 1866,[2] the word "Citizens 'under our constitution and laws means free inhabitants born within the United States or naturalized under the laws of Congress.' We find no warrant for the opinion that this great principle of the common law has ever been changed in the United States."[3] When Justice Swayne wrote these words, the nation was only beginning to recover from a great Civil War sparked in no small part by the Supreme Court's tragically misguided decision in the *Dred Scott* case.[4] That decision sought to modify the founders' rule of citizenship by denying American citizenship to a class of persons born within the United States. In response to *Dred Scott* and to the Civil War, Congress enacted the 1866 Act, and Congress and the States adopted the Fourteenth Amendment in order to place the right to citizenship based on birth within the jurisdiction of the United States beyond question. Any restriction on that right contradicts both the Fourteenth Amendment and the underlying principle that the amendment safeguards.

The several bills and resolutions now before Congress that would deny citizenship to children born in the United States to certain classes of alien parents raise various issues of law and policy. My testimony today will address two points

---

[1] Indeed, the common law's inclusive rule of citizenship by birth defined "the People" who created the Constitution. "The Constitution itself does not make the citizens; it is, in fact, made by them. It only . . . recognizes such of them as are natural — home-born." *Citizenship*, 10 Op. Att'y Gen. 382, 389 (1862).

[2] Act of Apr. 9, 1866, ch. 31, 14 Stat. 27 ("1866 Act").

[3] *United States v. Rhodes*, 27 F. Cas. 785, 789 (C.C.D. Ky. 1866) (No. 16,151) (Swayne, J., on circuit) (quoting 2 James Kent, *Commentaries on American Law* 288 n.(a) (11th ed. 1866)).

[4] *Dred Scott v. Sandford*, 60 U.S (19 How.) 393 (1857).

340

of constitutional law. First, because the rule of citizenship acquired by birth within the United States is the law of the Constitution, it cannot be changed through legislation, but only by amending the Constitution. A bill such as H.R. 1363, 104th Cong. (1995), the "Citizenship Reform Act of 1995," that purports to deny citizenship by birth to persons born within the jurisdiction of this country is unconstitutional on its face. Second, the proposed constitutional amendments on this topic conflict with basic constitutional principles. To adopt such an amendment would not be technically unlawful, but it would flatly contradict our constitutional history and our constitutional traditions. Affirming the citizenship of African-Americans that *Dred Scott* had denied, in 1862 President Lincoln's Attorney General wrote an opinion for the Secretary of the Treasury asserting "[a]s far as I know . . . you and I have no better title to the citizenship which we enjoy than the 'accident of birth' — the fact that we happened to be born in the United States." [5] Today, in 1995, we cannot and should not try to solve the difficult problems illegal immigration poses by denying citizenship to persons whose claim to be recognized as Americans rests on the same constitutional footing as that of any natural-born citizen. Members of both of your Subcommittees have worked vigorously, with the Department of Justice on an evenhanded bipartisan basis, on legislation and oversight to address these problems.

## I.

H.R. 1363, the "Citizenship Reform Act of 1995," exemplifies the various legislative proposals before the committees. The stated purpose of the bill is "to deny automatic citizenship at birth to children born in the United States to parents who are not citizens or permanent resident aliens." Section 3(a) of the bill amends section 301(a) of the Immigration and Nationality Act, which grants U.S. citizenship "at birth" to all persons "born in the United States, and subject to the jurisdiction thereof." Specifically, section 3(a) proposes to define the phrase "subject to the jurisdiction thereof" to include only children born to U.S. citizens or permanent resident aliens.

My office grapples with many difficult and close issues of constitutional law. The lawfulness of this bill is not among them. This legislation is unquestionably unconstitutional. The Fourteenth Amendment declares that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside." U.S. Const. amend. XIV, § 1. The unmistakable purpose of this provision was to constitutionalize the existing Anglo-American common law rule of jus soli or citizenship by place of birth and especially to extend it to persons of African descent and their descendants.

---

[5] 10 Op. Att'y Gen. at 394.

The phrase "subject to the jurisdiction thereof" was meant to reflect the existing common law exception for discrete sets of persons who were deemed subject to a foreign sovereign and immune from U.S. laws, principally children born in the United States of foreign diplomats, with the single additional exception of children of members of Indian tribes. Apart from these extremely limited exceptions, there can be no question that children born in the United States of aliens are subject to the full jurisdiction of the United States. And, as consistently recognized by courts and Attorneys General for over a century, most notably by the Supreme Court in *United States v. Wong Kim Ark,*[6] there is no question that they possess constitutional citizenship under the Fourteenth Amendment.

## A.

While the Constitution recognized citizenship of the United States in prescribing the qualifications for President, Senators, and Representatives, it contained no definition of citizenship until the adoption of the Fourteenth Amendment in 1868. Prior to that time, citizenship by birth was regulated by common law. And the common law conferred citizenship upon all persons[7] born within the territory of the United States, whether children of citizens or aliens.[8] The only common law exceptions to this generally applicable rule of jus soli were children born under three circumstances — to foreign diplomats, on foreign ships, and to hostile occupying forces — which, under principles of international law, were deemed not to be within the sovereignty of the territory.[9]

---

[6] 169 U.S. 649 (1898).

[7] Slaves, shamefully, not being considered persons at all for many legal purposes, were ignored by the common law analysis.

[8] *E.g., Murray v. The Schooner Charming Betsy,* 6 U.S. (2 Cranch) 64, 119 (1804) (presuming that all persons born in the United States were citizens thereof); *McCreery v. Somerville,* 22 U.S. (9 Wheat.) 354 (1824) (in determining title to land in Maryland, Court assumed that children born in the state of an alien were native-born citizens of the United States), *Lynch v. Clarke,* 1 Sand. Ch. 583 (N.Y. Ch. 1844) (in holding that child born in New York during temporary stay by alien parents was a citizen of the United States, Court, after thorough examination of law, concluded that it entertained no doubt that every person born within the dominions and allegiance of the United States, whatever the situation of his parents, was a natural-born citizen); Letter for Mr. Mason, United States Minister to France, from Mr. Marcy, Secretary of State (June 6, 1854), *in* 2 Francis Wharton, *Digest of the International Law of the United States* 394 (2d ed. 1887) ("In reply to the inquiry which is made by you . . . whether 'the children of foreign parents born in the United States, but brought to the country of which the father is a subject, and continuing to reside within the jurisdiction of their father's country, are entitled to protection as citizens of the United States,' I have to observe that it is presumed that, according to the common law, any person born in the United States, unless he be born in one of the foreign legations therein, may be considered a citizen thereof until he formally renounces his citizenship."); *Citizenship of Children Born in the United States of Alien Parents,* 10 Op. Att'y Gen. 328 (1862) (child born in the United States of alien parents who have never been naturalized is, by fact of birth, a native-born citizen of the United States); 10 Op. Att'y Gen. 382 (1862) (reaffirming general principle of citizenship by birth in the United States and rejecting the existence under law of a class of persons intermediate between citizens and aliens); Frederick Van Dyne, *Citizenship of the United States* 6–7 (1904) ("It is beyond doubt that, before the enactment of the civil rights act of 1866 . . . or the adoption of the constitutional amendment, all white persons, at least, born within the sovereignty of the United States, whether children of citizens or foreigners, excepting only children of ambassadors or public ministers of a foreign government, were native-born citizens of the United States.") (citations omitted).

[9] *United States v. Wong Kim Ark,* 169 U.S. 649 (1898); 4 Charles Gordon et al., *Immigration Law and Procedure* § 92–03[3] (rev. ed. 1995). *See infra* note 13 for a discussion of the status of tribal Indians.

**B.**

As the legislative history of the Civil Rights Act of 1866 and the Fourteenth Amendment makes clear, the definitions of citizenship contained in both were intended to codify the common law and overrule *Dred Scott*'s denial of citizenship to persons of African descent. Thus, with the three limited exceptions already noted and the additional exception of tribal Indians, the Fourteenth Amendment guaranteed citizenship to all persons born in the United States, including children born to aliens.

The Civil Rights Act of 1866 provides that "all persons born in the United States and not subject to any foreign power, excluding Indians not taxed, are hereby declared to be citizens of the United States." 1866 Act, § 1, 14 Stat. at 27. During the debates on the Act, the Chair of the House Judiciary Committee stated that the provision defining citizenship is "merely declaratory of what the law now is," and he cited, among other authorities, a quotation from William Rawle, whose constitutional law treatise was one of the most widely respected antebellum works: "Every person born within the United States, its Territories, or districts, whether the parents are citizens or aliens, is a natural-born citizen in the sense of the Constitution, and entitled to all the rights and privileges appertaining to that capacity." [10]

The Fourteenth Amendment initially contained no definition of citizenship. Senator Howard of Michigan proposed to insert the definition that became the opening sentence of the Fourteenth Amendment:

> This amendment which I have offered is simply declaratory of what
> I regard as the law of the land already, that every person born
> within the limits of the United States, and subject to their jurisdic-
> tion, is by virtue of natural law and national law a citizen of the
> United States. [11]

He explained that this was not meant to include those discrete classes of persons excluded by the common law, "but will include every other class of persons."

The Framers intended the amendment to resolve not only the status of African-Americans and their descendants, but members of other alien groups as well. This is reflected in the exchange between Senators Trumbell and Conness, supporters of the Fourteenth Amendment and the Civil Rights Act, and Senator Cowan, a strong opponent of both. Senator Cowan expressed his reluctance to amend the

---

The principal alternative system, jus sanguinis used in most civil law European countries, grants citizenship by descent or blood—that is, according to the citizenship of one's parents. This system obviously could not have operated in the United States at its inception, where, except for American Indians, the inhabitants were citizens of other countries.

[10] Cong. Globe, 39th Cong., 1st Sess. 1115 (1866); *id.* at 1117 (quoting William Rawle, *A View of the Constitution of the United States of America* 80 (1829)).

[11] *Id.* at 2890.

Constitution in such a way as would "tie the[ ] hands" of the Pacific states "so as to prevent them . . . from [later] dealing with [the Chinese] as in their wisdom they see fit." [12] The supporters of the citizenship clause responded by confirming their intent to constitutionalize the U.S. citizenship of children born in the United States to alien parents.

> Senator Cowan . . . . I am really desirous to have a legal definition of 'citizenship of the United States.' What does it mean? . . . Is the child of the Chinese immigrant in California a citizen? Is the child of a Gypsy born in Pennsylvania a citizen?

> Senator Conness . . . . The proposition before us . . . relates . . . to the children begotten of Chinese parents in California, and it is proposed to declare that they shall be citizens. We have declared that by law; now it is proposed to incorporate the same provision in the fundamental instrument of the nation. I am in favor of doing so. [13]

### C.

The constitutional guarantee of citizenship to children born in the United States to alien parents has consistently been recognized by courts, including the Supreme Court, and Attorneys General for over a century. Most notably, in *United States v. Wong Kim Ark*,[14] the Supreme Court held that a child born in San Francisco

---

[12] *See, e.g., id.* at 2891.

[13] *Id.* at 2890–91.

A great deal of attention was spent on how (not whether) to exclude unassimilated or tribal Indians. Ultimately, any reference to "excluding Indians not taxed"—the phrase used in the Civil Rights Act of 1866—was omitted as unnecessary, as they were not deemed to be "subject to the jurisdiction" of the United States because of the unique status of Indian tribes within the United States. In *Elk v. Wilkins*, 112 U.S. 94, 99 (1884), the Court construed the "subject to jurisdiction" clause in a case brought by an Indian claiming citizenship who was born a member of a tribe, but who had later taken up residence among the non-Indian citizens of the state. The Court held he was not a United States citizen, because he was not "subject to the jurisdiction" of the United States at the time of his birth. In construing the phrase "subject to the jurisdiction" the Court noted that the Indian tribes, although not, strictly speaking, foreign nations, were alien nations with distinct political communities with which the United States entered into treaties.

> Indians born within the territorial limits of the United States, members of, and owing immediate allegiance to, one of the Indian tribes (an alien, though dependent, power), although in a geographical sense born in the United States, are no more "born in the United States and subject to the jurisdiction thereof," within the meaning of the first section of the Fourteenth Amendment, than the children of subjects of any foreign government born within the domain of that government, or the children born within the United States, or ambassadors of other public ministers of foreign nations.

*Id.* at 102; *see also* David C. Williams, *The Borders of the Equal Protection Clause: Indians as Peoples*, 38 UCLA L. Rev. 759, 832–41 (1991) (reviewing the legislative history of the citizenship clause to conclude that "subject to jurisdiction" was intended to exclude tribal Indians with separate laws and governments of their own, and thus were, "in modern international law parlance, a separate people"). *Wilkins* cannot be interpreted to mean that children born in the United States of aliens are not "subject to the jurisdiction" of the United States because their parents may owe some allegiance to their own country of birth. Otherwise, dual nationality would be prohibited.

The denial of citizenship to American Indians was later corrected by statute. 8 U.S.C. § 1401(b).

[14] 169 U.S. 649 (1898).

of Chinese parents (who, under the Chinese Exclusion laws then in effect, could never themselves become U.S. citizens) became at the time of his birth in the United States a citizen of the United States, by virtue of the Fourteenth Amendment.

The Court, in a detailed review of the Anglo-American common law of citizenship and the legislative history of the Fourteenth Amendment, established several propositions. First, because the Constitution does not define United States citizenship, it must be interpreted in light of the common law. Under the common law of England, which was adopted by the United States, every child born within the territory of alien parents was a natural-born subject, with the exception of children born of foreign ambassadors, of alien enemies during hostile occupation, and of aliens on a foreign vessel.

Further, "[a]s appears upon the face of the [Fourteenth] Amendment, as well as from the history of the times, [the amendment] was not intended to impose any new restrictions upon citizenship, or to prevent any persons from becoming citizens by the fact of birth within the United States, who would thereby have become citizens according to the law existing before its adoption. It is declaratory in form, and enabling and extending in effect." *Wong Kim Ark*, 169 U.S. at 676. Specifically, the Court explained, "[t]he real object . . . in qualifying the words '[a]ll persons born in the United States', by the addition 'and subject to the jurisdiction thereof,' would appear to have been to exclude, by the fewest and fittest words (besides children of members of the Indian tribes, standing in a peculiar relation to the National Government, unknown to the common law), the two classes of cases — children born of alien enemies in hostile occupation, and children of diplomatic representatives of a foreign state — both of which, . . . by the law of England and by our own law, . . . had been recognized exceptions to the fundamental rule of citizenship by birth within the country." *Id.* at 682.

In concluding its review of the relevant law, the Court summarized:

The fourteenth amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes. The amendment, in clear words and in manifest intent, includes the children born within the territory of the United States, of all other persons, of whatever race or color, domiciled within the United States. Every citizen or

> subject of another country, while domiciled here, is within the alle-
> giance and the protection, and consequently subject to the jurisdic-
> tion, of the United States.

*Id.* at 693.

The Court then turned to the status of Chinese persons in the United States under the Constitution and the Chinese Exclusion Acts, which provided for exclusion and expulsion of Chinese persons. After considering the effects of both sources of law, the Court held that *Wong Kim Ark* had become a citizen at birth by virtue of the Fourteenth Amendment, reaffirming the constitutional principle that "[t]he fourteenth amendment, while it leaves the power, where it was before, in congress, to regulate naturalization, has conferred no authority upon congress to restrict the effect of birth, declared by the constitution to constitute a sufficient and complete right to citizenship." *Id.* at 703.

The principles set forth in *Wong Kim Ark* cannot be dismissed as having been overtaken by contemporary judicial interpretation or current events. Both the courts and commentators have consistently cited and followed the principles of *Wong Kim Ark.*[15]

I am aware of only one statement of the contrary view that birthright citizenship may be modified by a simple act of legislation. In their 1985 book, Professors Peter Schuck and Rogers Smith argue for a novel "reinterpretation" of the citizenship clause.[16] Briefly, the authors recommend replacing the "ascriptive" approach to citizenship — which determines citizenship by an objective circumstance, such as place of birth or citizenship of parents — with a "consensual" approach — which makes political membership a product of mutual consent by the polity and the individual. The authors argue that the Fourteenth Amendment may be reinterpreted to allow Congress to deny citizenship to children of illegal aliens by legislation (as opposed to constitutional amendment). As support, the authors attempt

---

[15] *See INS v. Rios-Pineda,* 471 U.S. 444, 446 (1985) (in habeas proceeding brought by deportable aliens, Court noted that respondent had given birth to a child, "who, born in the United States, was a citizen of this country"); *Plyler v. Doe,* 457 U.S. 202, 211 n.10 (1982) (relying on *Wong Kim Ark's* predominantly geographic interpretation of the "jurisdiction" clause of the Fourteenth Amendment); *Rogers v. Bellei,* 401 U.S. 815, 829–30 (1971) (citizenship clause is " 'declaratory of existing rights, and affirmative of existing law,' so far as the qualifications of being born in the United States, being naturalized in the United States, and being subject to its jurisdiction are concerned"); *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 159 n.10 (1963) (confirming that the citizenship clause "is to be interpreted in light of pre-existing common-law principles governing citizenship"); *Morrison v. California,* 291 U.S. 82, 85 (1934) (noting that although persons of Japanese descent were not eligible to become citizens through naturalization, a person of Japanese descent is a citizen of the United States if he was born within the United States, citing *Wong Kim Ark*); 4 Charles Gordon et al., *Immigration Law and Procedure* §92.03[2][e] (rev. ed. 1995) (noting that any uncertainty regarding the applicability of the jus soli rule to children born in this country was "finally resolved by the Fourteenth Amendment and the Supreme Court's decision in *U.S. v. Wong Kim Ark.* There is now no doubt that the constitutional rule of universal citizenship for all persons born in the United States is unaffected by the status of their parents, except in minimal situations. Thus American citizenship is acquired by children born in the United States, even though their parents were always aliens, and even if the parents were themselves ineligible to become citizens of the United States. Nor has the acquisition of citizenship been affected by the circumstance that the child's alien parents were in the United States temporarily or even illegally at the time the child was born.") (footnotes omitted).

[16] Peter H. Schuck & Rogers M. Smith, *Citizenship Without Consent: Illegal Aliens in the American Polity* (1985).

to show that the Framers of the Fourteenth Amendment intended the reference to "subject to the jurisdiction" of the United States to replace the existing ascriptive common law principle with one of express mutual consent. As one reviewer recommends, the authors' proposals "should be relegated to academic debate." [17]

Schuck and Smith are proposing a change in the law, not a plausible reinterpretation of the Constitution. Their theory would require repudiation of the language of the Constitution itself, the clear statements of the Framers' intent, and the universal understanding of 19th and 20th century courts. Indeed, the authors themselves concede that there is no judicial precedent in support of their theory. Moreover, as one review of the book notes on a more philosophical level, "[t]he examples [Schuck and Smith give in support of their consent theory] — the denial of citizenship to Blacks, Indians and Chinese — are all deeply shameful for contemporary Americans. This is not a history to build on." [18]

In short, the text and legislative history of the citizenship clause as well as consistent judicial interpretation make clear that the amendment's purpose was to remove the right of citizenship by birth from transitory political pressures. The Supreme Court noted in *Wong Kim Ark*,[19] "[t]he same congress, shortly afterwards, evidently thinking it unwise, and perhaps unsafe, to leave so important a declaration of rights to depend upon an ordinary act of legislation, which might be repealed by any subsequent congress, framed the fourteenth amendment of the constitution." More recently, the Supreme Court noted in *Afroyim v. Rusk* [20] that the framers of the Fourteenth Amendment "wanted to put citizenship beyond the power of any governmental unit to destroy." *See also Rogers v. Bellei*, 401 U.S. at 835 (recognizing that "Congress has no 'power, express or implied, to take away an American citizen's citizenship without his assent,' " where that citizenship is attained by birth). By excluding certain categories of native-born persons from U.S. citizenship, the proposed legislation impermissibly rescinds citizenship rights that are guaranteed to those persons by the citizenship clause of the Fourteenth Amendment. Such a rescission of constitutionally protected rights is beyond Congress's authority.

---

[17] Arthur C. Helton, *Citizenship Without Consent*, 19 N.Y.U. J. Int'l L. & Pol. 221, 226 (1986) (book review). For incisive critiques of Schuck and Smith's work, see also, David A. Martin, *Membership and Consent: Abstract or Organic?*, 11 Yale J. Int'l L. 278 (1985) (book review); Gerald L. Neuman, *Back to Dred Scott?*, 24 San Diego L. Rev. 485 (1987) (book review).

[18] David Howarth, *Citizenship Without Consent*, 46 Cambridge L.J. 169, 170 (1987) (book review).

[19] 169 U.S. at 675.

[20] 387 U.S. 253, 263 (1967).

## II.

Congress is, of course, constitutionally free to propose, and the states to ratify, any amendment to the Constitution.[21] Such naked power undeniably exists. The Constitution taken as a whole, however, stands for certain enduring principles.[22] When Congress undertakes to tamper through the amendment process with the most basic presuppositions of American constitutionalism, it should do so with exceeding caution and utmost restraint. The proposition that all persons born in the United States and subject to its jurisdiction are citizens at birth is one of those bedrock principles.

Academics may conceive of nation-states in which citizenship would not necessarily extend to those who lack the approval or mutual consent of existing citizens. But the country in question is not some theoretical conception, but our own country with its real experience and its real history. It would be a grave mistake to alter the opening sentence of the Fourteenth Amendment without sober reflection on how it came to be part of our basic constitutional charter.

The constitutional principle with which these proposed amendments would tamper flows from some of the deepest wellsprings of American history. From the earliest days of our nation, with the tragic exception of slaves and tribal Indians, all those who were born on its soil and subject to no foreign power became its citizens. The simple fact of birth here in America was what mattered.

And then came *Dred Scott*. In its most monumentally erroneous decision, the Supreme Court created a monstrous exception to the common law rule that birth on American soil to a free person was sufficient for American citizenship. The Court held that no persons of African descent—including free persons of African descent—and none of their descendants for all time to come could ever be citizens of the United States regardless of their birth in America.

It was in the aftermath of this decision that one of our great political parties was formed. In 1857, in the first of many speeches he was to give on the subject, that party's candidate for President in 1860 denounced *Dred Scott*'s creation of a class of persons born on American soil and yet without rights and condemned to pass their status on to future generations. Abraham Lincoln declared that the defenders of that decision had committed themselves to a principle that contradicted—and that made a "mere wreck—mangled ruin"—of the Declaration of Independence.[23]

Afterwards, the nation plunged into the heart of darkness—a savage and brutal civil war in which hundreds of thousands lost their lives on the battlefield. From those ashes, a nation was reformed. It is no trivial matter that the Fourteenth

---

[21] The only present exception to this rule is the proviso to Article V of the Constitution that "no State, without its Consent, shall be deprived of its equal Suffrage in the Senate."

[22] *See* Walter Dellinger, *Constitutional Politics: A Rejoinder*, 97 Harv. L. Rev. 446, 447 (1983).

[23] Speech at Springfield, Illinois (June 26, 1857), *in* 2 *The Collected Works of Abraham Lincoln* 406 (Roy P. Basler, ed. 1953).

Amendment opens with the principle that some would now change. From our experience with *Dred Scott*, we had learned that our country should never again trust to judges or politicians the power to deprive from a class born on our soil the right of citizenship. We believe that no discretion should be exercised by public officials on this question — there should be no inquiry into whether or not one came from the right caste, or race, or lineage, or bloodline in establishing American citizenship. Other nations may seek more consensual and perhaps more changeable forms of citizenship; for us, for our nation, the simple, objective, bright-line fact of birth on American soil is fundamental.

Since the Civil War, America has thrived as a republic of free and equal citizens. This would no longer be true if we were to amend our Constitution in a way that would create a permanent caste of aliens, generation after generation after generation born in America but never to be among its citizens. To have citizenship in one's own right, by birth upon this soil, is fundamental to our liberty as we understand it. In America, a country that rejected monarchy, each person is born equal, with no curse of infirmity, and with no exalted status, arising from the circumstance of his or her parentage. All who have the fortune to be born in this land inherit the right, save by their own renunciation of it, to its freedoms and protections. Congress has the power to propose an amendment changing these basic principles. But it should hesitate long before so fundamentally altering our republic.

WALTER DELLINGER
*Assistant Attorney General*
*Office of Legal Counsel*