Julio Cesar OTAROLA, Petitioner,

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent.

No. 99–71405.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2001

Filed Oct. 18, 2001

Alexander N. Lopez, Glendale, California, and Maziar Razi, Pasadena, California, for the petitioner.

Kurt B. Larson and Brian G. Slocum, United States Department of Justice, Washington, D.C., for the respondent.

Before: HUG, GRABER, and W. FLETCHER, Circuit Judges.

Opinion By Judge HUG; Dissent by Judge GRABER.

HUG, Circuit Judge:

Julio Cesar Otarola appeals a final order of removal entered by the Board of Immigration Appeals ("BIA") on September 30, 1999. Otarola argues that the BIA erred by applying the "stop-time" rule set forth in section 309(c)(5) of IIRIRA[1] in determining whether he satisfied the seven-year residency requirement for suspension of deportation. The Immigration Judge ("IJ") correctly ruled that the effective date of IIRIRA was not until April 1, 1997; that Otarola's application for suspension, heard on October 25, 1996, was governed by pre-IIRIRA law; and that the seven-year residency requirement was met. The IJ also found that the other requirements were met and granted Otarola's application for suspension of deportation.

In the face of clear statutory language and this court's precedent holding that the stop-time provision of IIRIRA was not effective until April 1, 1997, the Immigration and Naturalization Service ("INS") prosecuted this appeal on the sole ground that the stop-time rule applied to Otarola on October 25, 1996, and thus he had not met the seven-year residency requirement. The appeal was meritless and yet pursued by the INS. The BIA heard the appeal after April 1, 1997, applied IIRIRA's stop-time rule, and denied Otarola's petition for suspension of deportation. Had the INS not pursued a completely meritless appeal of the IJ's decision, the IJ's order granting suspension of deportation would have been final. We conclude that the BIA's reversal of the IJ's decision applying the correct effective date of IIRIRA would contravene Congressional intent in providing a six-month delay before IIRIRA took effect. Accordingly, we grant the petition for review and remand the case to the BIA with instructions to affirm the IJ's decision.

## I.

Julio Cesar Otarola is a native and citizen of Peru who entered the United States without inspection on or about February 22, 1989. On December 4, 1995, the INS served Otarola with an order to show cause ("OSC"), which charged that he was subject to deportation pursuant to § 241(a)(1)(B) of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1251(a)(1)(B).

At his initial deportation hearing on April 15, 1996, Otarola admitted the allegations of fact in the OSC, conceded his eligibility for deportation, and requested leave to apply for suspension of deporta-

1. Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104– 208, 110 Stat. 3009 (Sept. 30, 1996).

tion. On October 25, 1996, Otarola presented his case for suspension of deportation, and the immigration judge ("IJ") found that Otarola was entitled to suspension of deportation by satisfying the three pre-IIRIRA statutory requirements.[2] In her ruling, the IJ rejected the INS's argument that IIRIRA's stop-time rule applied to Otarola on October 25, 1996.[3] The IJ entered an order granting Otarola's application for suspension of deportation.

On November 20, 1996, the INS appealed the IJ's decision on the sole ground that the stop-time rule was applicable on October 25, 1996 and that therefore the IJ lacked "statutory authority to consider [Otarola's] request" because the stop-time rule rendered Otarola "statutorily [in]eligible for relief from deportation." Treating the stop-time rule as if it were effective on October 25, 1996, the INS contended that Otarola fell three months shy of seven years of continuous presence and thus could not establish threshold eligibility for suspension of deportation.

On June 16, 1997, the INS filed a short memorandum which reiterated its arguments from the initial brief, stating that it "stands upon its previously filed brief. . . . Respondent is not statutorily eligible for relief from deportation. . . . As a result of the Immigration Judge lacking statutory authority to consider Respondent's request for suspension of deportation, the Service's appeal should be sustained." On March 9,

1998, the BIA sent out a "Notice of Additional Briefing Period" in which the parties were granted additional time to file briefs "in view of the recent changes in the law governing suspensions of deportation under section 244(a) of the [INA]." Otarola filed a brief which cited binding circuit precedent, *Astrero v. INS*, 104 F.3d 264, 266 (9th Cir.1996) (holding that the stop-time rule was not effective until April 1, 1997), and argued that it "directly addressed the issue presented in this case." The INS did not respond to Otarola's arguments or to the Notice of Additional Briefing.

On September 30, 1999, the BIA sustained the appeal of the INS. Despite the fact that the IJ had correctly applied pre IIRIRA law, the BIA applied the stop-time provision, which terminated Otarola's accrual of time toward the physical presence requirement upon service of the OSC. Because Otarola had not attained seven years of physical presence as of the date the OSC was served, the BIA ruled that Otarola "cannot meet the physical presence requirement for suspension of deportation." Otarola timely petitioned for review.

## II.

 This petition is governed by IIRIRA's transitional rules. *Kalaw v. INS*, 133 F.3d 1147, 1150 (9th Cir.1997). We

---

2. Prior to IIRIRA, an alien was eligible for suspension of deportation if (1) he or she "ha[d] been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of [the] application" for suspension of deportation; (2) he or she was a "person of good moral character"; and (3) deportation would result in "extreme hardship" to the alien or to an immediate family member who was a U.S. citizen or a lawful permanent resident. INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994).

3. Before the stop-time rule went into effect, an alien accrued time towards the continuous physical presence requirement until applying for suspension of deportation. The issuance of an OSC had no effect on this accrual. Congress altered this system by enacting IIRIRA's stop-time rule, which provides that the period of continuous physical presence in the United States shall end when the INS initiates removal proceedings. INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1). Thus, under the stop-time rule, an alien must meet the continuous physical presence requirement before he or she is served with an OSC.

have jurisdiction pursuant to 8 U.S.C. § 1105a(a), as amended by IIRIRA section 309(c). *Guadalupe–Cruz v. INS*, 240 F.3d 1209, 1211 (9th Cir.2001). The BIA's determination of purely legal questions are reviewed de novo. *Ratnam v. INS*, 154 F.3d 990, 994 (9th Cir.1998). We review BIA interpretations of the INA de novo, but with deference to the BIA's interpretation of the statute. *Urbina–Mauricio v. INS*, 989 F.2d 1085, 1087 (9th Cir.1993).

### III.

One month after the INS filed its appeal arguing that the IJ erred by not applying the stop-time rule on October 25, 1996, this court ruled that the stop-time rule was not effective in deportation proceedings until April 1, 1997. *Astrero*, 104 F.3d at 266. *Astrero* relied on the "clear statutory language" that the "effective date for the new § 240A is 'the first day of the first month beginning more than 180 days after the date of the enactment of th[e] Act ...' or April 1, 1997." *Id.* at 266 (citing IIRIRA § 309(a)). Despite clear statutory language to the contrary and our holding in *Astrero*, the INS continued with this appeal and argued, as of June 16, 1997, that the IJ lacked "statutory authority" to consider Otarola's suspension request. When confronted with Otarola's supplemental brief, which correctly pointed out that *Astrero* "directly addressed the issue presented in this case," the INS responded with silence.

█ In general, the BIA is bound to apply current law. *Urbina–Mauricio v. INS*, 989 F.2d at 1088 n. 4 ("When the law is amended before an administrative agency hands down a decision, the agency must apply the new law."). Furthermore, we have stated that "the BIA [is] required to apply the law existing at the time of its review, even if different from the law applied by the IJ." *Ortiz v. INS*, 179 F.3d 1148, 1156 (9th Cir.1999).

However, in *Guadalupe–Cruz v. INS*, 240 F.3d 1209, 1212 (9th Cir.2001), we decided that the BIA erred by applying the then-current IIRIRA. In contrast to Otarola's case, in which the IJ applied the correct law as of the date of his decision, *Guadalupe–Cruz* involved an application for suspension of deportation where the IJ incorrectly applied IIRIRA's stop-time rule before April 1, 1997. *Id.* at 1210. Although IIRIRA had become effective by the time the BIA issued its decision and rendered the petitioner statutorily ineligible for suspension, we ruled that the BIA erred by not addressing the IJ's error in applying the stop-time rule before April 1, 1997. *Id.* at 1212. There, we remanded to the IJ for a determination of the petitioner's eligibility for suspension under pre-IIRIRA law. *Id.*

█ Similarly, in *Castillo–Perez v. INS*, 212 F.3d 518, 522 (9th Cir.2000), the BIA found that the alien had established a *prima facie* case of ineffective assistance of counsel; nevertheless, the BIA denied the alien's request for remand because IIRIRA had imposed the stop-time rule after the IJ's ruling and before the BIA's decision. The BIA held that the alien was no longer able to meet the necessary seven-year continuous physical presence requirement. *Id.* Despite the rule that the BIA should generally apply then-current law, we remanded the case, instructing the BIA to order a hearing before an IJ in which the alien would be entitled to apply for suspension of deportation under pre-IIRIRA law. *Id.* at 528. Thus, the general rule that the BIA should apply then-current law is not absolute, particularly when it comes to review of non-discretionary, procedural issues.

The issue here is whether this situation qualifies for an exception to the general rule: Can the INS delay proceedings by filing and maintaining meritless appeals in

the face of clear statutory language and circuit precedent to the contrary in order to take advantage of a change in the immigration laws that becomes available solely by virtue of the time delay resulting from the meritless appeal? The Supreme Court addressed a similar issue when aliens sought to delay their proceedings until they had accrued seven years of physical presence. In *INS v. Rios–Pineda*, 471 U.S. 444, 452, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985), the Court concluded that it was within the BIA's discretion to refuse to reopen a suspension proceeding because the aliens had filed frivolous appeals in order to accrue seven years of residency. The Court reasoned:

> No substance was found in any of the points raised on appeal, ... and we agree with the BIA that they were without merit. *The purpose of an appeal is to correct legal errors which occurred at the initial determination* of deportability; it is not to permit an indefinite stalling of physical departure in the hope of eventually satisfying legal prerequisites.

*Id.* (emphasis added).

 In this case, the shoe is on the other foot. While the aliens in *Rios–Pineda* filed frivolous appeals in order to accrue the requisite seven years of presence, the INS in the present case maintained an appeal with no legal merit apparently thinking that the BIA would apply the stop-time rule after April 1, 1997. If it is improper for aliens to file frivolous appeals simply to secure the passage of time, then it is improper for the INS to engage in similar tactics. Allowing the INS to appeal a correct IJ decision on a frivolous, non-discretionary procedural ground in order to avail itself of the stop-time rule would undermine clear Congressional intent to enact a 180–day delay period.

Congress was clear when it established the effective date for IIRIRA. By explicitly establishing IIRIRA's effective date as, "the first day of the first month beginning more than 180 days after the date of the enactment[4] of this Act," Congress mandated a six-month delay period in which pre-IIRIRA law was to be followed. *See* IIRIRA § 309(a). Nevertheless, the INS contended that IIRIRA was effective on October 25, 1996. IIRIRA's plain text, however, indicated that April 1, 1997 was the effective date. Even after we made this obvious conclusion an explicit holding in *Astrero*, which was decided December 30, 1996, the INS persisted with a contrary argument in its brief dated June 16, 1997. To allow the INS to gain access to the stricter immigration laws of IIRIRA by filing and maintaining frivolous appeals would render Congress's six-month delay provision nugatory.

The BIA is to review de novo whether the IJ correctly applied the law. The INS appealed on the sole ground that the IJ erred in applying the stop-time rule. No other matter was properly before the BIA on appeal. Thus, there was no basis for the BIA to reverse the IJ's decision, because she had applied the correct law.

## IV.

The dissent argues that this case is controlled by *Ram v. INS*, 243 F.3d 510 (9th Cir.2001). That case differs significantly from this case. In *Ram* the petitioners filed a motion to reopen a completed deportation process. They sought suspension of deportation because the required seven-years residence had been fulfilled after the BIA's decision in the deportation proceeding. Thus, the motion incorporating the petition was made directly in the first instance to the BIA, which ruled that

---

4. September 30, 1996.

the Rams had not satisfied the new stop-time rule. Thus, the initial ruling on eligibility was after the April 1, 1997 effective date of IIRIRA. This was not an appeal from a correct ruling by an IJ prior to the effective date, as in the case before us. Furthermore, from a policy standpoint the Rams had acquired their seven-year residency requirement during an extended appellate process that they had initiated. This is the very thing that motivated the enactment of the stop-time provision.

Otarola, on the other hand, had completed the seven-year requirement before the IJ ruled and before the effective date of IIRIRA. There was no stalling on his part by means of appeals; the only stalling was by the INS by means of a meritless appeal. In *Ram* the initial request for suspension was brought before the BIA in a motion to reopen the deportation proceedings; in Otarola the matter was before the BIA on a meritless appeal of a correct initial ruling by the IJ. Had the INS not proceeded with its meritless appeal, the correct ruling of the IJ would have stood and Otarola would have been entitled to suspension of deportation.[5]

## V.

Petition GRANTED. Because the BIA denied Otarola's application for suspension of deportation "solely on the basis of the stop-time rule," we REMAND with instructions for the BIA to affirm the decision of the IJ.

GRABER, Circuit Judge, dissenting:

I respectfully dissent. The BIA correctly applied current law, as it was obligated to do. The majority attempts unavailingly to distinguish the controlling case, *Ram v. INS*, 243 F.3d 510, 516 (9th Cir.2001), instead relying heavily on an incomplete reading of *Astrero v. INS*, 104 F.3d 264, 266 (9th Cir.1996). Moreover, the majority misapplies *Guadalupe–Cruz v. INS*, 240 F.3d 1209, 1210 n. 1 (9th Cir.), *amended by* 250 F.3d 1271 (9th Cir.2001); and *Castillo–Perez v. INS*, 212 F.3d 518, 523 (9th Cir. 2000).

### A. Setting the Stage: The Chronology

Petitioner's deportation proceedings coincided with dramatic changes in immigration law. To understand how that law applies to him, it is necessary first to set out the events leading up to this appeal and the effective dates of the relevant statutory changes. The Appendix details this chronology in a chart.

On February 23, 1989, Petitioner entered the United States from Peru. On December 4, 1995, less than seven years later, he was served with an "order to show cause," the INS's charging document. On April 15, 1996, an initial deportation hearing was held. Petitioner conceded deportability, but applied for a suspension of deportation based on continuous physical presence.

On September 30, 1996, IIRIRA was signed into law. Section 309(a), entitled "In general," establishes that IIRIRA's provisions were to become effective "on the first day of the first month beginning more than 180 days after the date of the enactment of this Act"—that is, April 1, 1997. *Astrero*, 104 F.3d at 266.

On October 25, 1996, *before* the effective date of the Act, the IJ in Petitioner's case correctly applied pre-IIRIRA law and granted Petitioner's suspension of deportation. In November of 1996, the INS appealed. Also in November of 1996, the INS argued its interpretation of the effec-

---

5. The dissent states that *Astrero* warned that after April 1, 1997, the new requirements of IIRIRA may apply retroactively. However, nothing in *Astrero* indicates that the INS could proceed with a meritless appeal so as to bring the matter before the BIA after April 1, 1997 in order to apply the stop-time rule retroactively.

tive date of IIRIRA before this court in *Astrero*. We decided *Astrero* on December 30, 1996.

On April 1, 1997, in accordance with § 309(a) as construed by *Astrero*, IIRIRA became effective. At that time, the INS's appeal of Petitioner's case remained pending before the BIA. In June of 1997, the INS filed a short memorandum with the BIA stating simply that it rested on its brief, which had been filed on November 20, 1996. On September 30, 1997, as required by § 309(c)(5)(A), the BIA applied IIRIRA's now-effective stop-time rule, § 240A(d)(1), and held that Petitioner did not meet the seven-year continuous presence requirement.

In November of 1997, Congress enacted the Nicaraguan Adjustment and Central American Relief Act (NACARA). It became effective as if originally part of IIRIRA. Pub.L. 105–100, § 203(f), 111 Stat. 2200 (Nov. 19, 1997).

### B. *Applicable Statutes*

Section 240A(d)(1) of IIRIRA, 8 U.S.C. § 1229b(d)(1), is known as the stop-time rule. Before the stop-time rule was enacted, aliens could count time spent in appeals to the INS toward their period of "continuous physical presence" in the United States for the purpose of applications to suspend deportation. After the enactment of § 240A(d)(1), continuous physical presence stops accruing upon service of an order to show cause or a notice to appear.

Section 309(a), set forth in the notes to 8 U.S.C. § 1101, articulates the effective date of IIRIRA. Section 309(c), entitled "Transition for certain aliens," begins by establishing the general rule of IIRIRA's applicability to "transitional aliens": "Subject to the succeeding provisions of this

subsection," the amendments do not apply to aliens in exclusion or deportation who were in proceedings before IIRIRA's effective date. However, the statute does not stop there.

Section 309(c)(5)(A), a "succeeding provision of ... subsection" 309(c), states:

> In general—Subject to subparagraphs (B) and (C),[1] paragraphs (1) and (2) of section 240A(d) of the Immigration and Nationality Act [section 1229b(d) of this title] (relating to continuous residence or physical presence) *shall apply to orders to show cause ... issued before,* on, or after *the date of the enactment of this Act ....*

(Emphasis added.) The clear intent of Congress in enacting these statutes and subsequent amendments is that, after April 17, 1997, the stop-time rule in § 240A(d)(1) applies to aliens whose orders to show cause "issued before" that effective date.

### C. *The majority fails to apply the controlling case.*

This case is controlled by *Ram*. There, we held that the BIA *must* apply IIRIRA's stop-time rules to transitional-rule aliens like Petitioner:

> Because the legislative history of NACARA resolves any ambiguity in the plain language of IIRIRA section 309(c)(5)(A), we conclude that *there is only one reasonable interpretation of this statute.* We hold that IIRIRA section 309(c)(5)(A) generally applies the stop-time rule to transitional rule aliens whose deportations were initiated with the service of an [order to show cause] and who seek suspension of deportation.

243 F.3d at 516 (emphasis added).

The Ram family entered the United States on August 22, 1987. *Id.* at 512. On

---

1. Subparagraph (B) concerns cases in which the Attorney General elects to terminate and reinitiate proceedings. Subparagraph (C) exempts certain classes of aliens from the retroactivity of § 309(c)(5)(A). Neither of those provisions affects Petitioner.

May 17, 1988, they were served with an order to show cause and, later, were found deportable (but granted voluntary departure) by an IJ. They challenged the IJ's decision before the BIA, which affirmed. *Id.*

On November 16, 1994, the Rams moved to reopen the deportation proceeding to apply for suspension of deportation. Their appeal was then pending before this court. *Id.* The Rams asserted that they had accrued seven years of physical presence while their deportation proceeding was pending. The BIA denied the motion to reopen, and we remanded the case for reconsideration. *Id.*

On June 29, 1999, more than two years after IIRIRA became effective, the BIA applied § 240A(d)(1) retroactively. *Id.* at 512. We affirmed.

In so doing, we carefully construed the statutory text and held that § 309(c)(5)(A) requires application of the stop-time rule to aliens, like the Rams and Petitioner, who were served with orders to show cause before the effective date of IIRIRA. *Id.* at 513–16. We also described extensive legislative history that supports this conclusion. *Id.* at 515–16. As initially enacted, § 309(c)(5)(A) stated that the stop-time rule applied to "notices to appear" issued before, on, or after the effective date of IIRIRA. Because the term "notices to appear" in IIRIRA replaced the old term "orders to show cause," there was confusion as to how the stop-time rule could apply to such non-existent documents issued before the effective date of the Act. *Id.* at 513, 515. That is, because

IIRIRA first introduced the term, there were no "notices to appear" issued before the effective date of IIRIRA. However, NACARA amended § 309(c)(5)(A) retroactively and changed the term to "orders to show cause." *Id.* at 515. This change makes the intent of Congress much clearer—§ 309(c)(5)(A) expressly applies the stop-time rule of § 240A to charging documents issued before the effective date of IIRIRA.[2] *Id.* at 516.

In so holding, we joined seven other circuits. *Sad v. INS*, 246 F.3d 811, 818 (6th Cir.2001); *Angel–Ramos v. Reno*, 227 F.3d 942, 947 (7th Cir.2000); *Afolayan v. INS*, 219 F.3d 784, 788 (8th Cir.2000); *Rivera–Jimenez v. INS*, 214 F.3d 1213, 1217 (10th Cir.2000); *Gonzalez–Torres v. INS*, 213 F.3d 899, 903 (5th Cir.2000); *Appiah v. INS*, 202 F.3d 704, 708 (4th Cir.), *cert. denied*, 531 U.S. 857, 121 S.Ct. 140, 148 L.Ed.2d 92 (2000); *Tefel v. Reno*, 180 F.3d 1286, 1293 (11th Cir.1999), *cert. denied*, 530 U.S. 1228, 120 S.Ct. 2657, 147 L.Ed.2d 272 (2000). We also approved the BIA's own interpretation, *Nolasco–Tofino*, Int. Dec. 3385, 1999 WL 218466 (B.I.A. Apr. 15, 1999) (en banc), to which we owe some deference, *Urbina–Mauricio v. INS*, 989 F.2d 1085, 1087 (9th Cir.1993).

Although the Rams' case was in a different procedural posture than is Petitioner's, the cases are indistinguishable with respect to the application of the stop-time rule. The majority attempts to distinguish *Ram* on the grounds that it "was not an appeal from a correct ruling by an IJ prior to the effective date" of IIRIRA; that the Rams, rather than the INS, had appealed; and that Petitioner "had completed the seven-year requirement before the IJ

---

**2.** Section 309(c)(5)(A) essentially codified the BIA's holding in *N–J–B–*, 21 I. & N. Dec. 812, Int. Dec. 3309, 1997 WL 107593 (B.I.A. Feb. 20, 1997) (en banc), which was vacated by former Attorney General Reno. *See N–J–B–*, Int. Dec. 3415, 1999 WL 1390344 (B.I.A. Aug.

20, 1999). That decision was vacated not because it was wrong, but because consistent legislative action was imminent. Immigration Legislation Handbook § 4:23 (West 2000).

ruled and before the effective date of IIRI-RA." (Maj. op. at 1276–77.) The first ground is beside the point in view of our cases, discussed below in Part E, which *require* the BIA to apply new law to a pending appeal even if the IJ correctly applied previous law. With respect to the second ground, nothing in IIRIRA or in the logic of *Ram* suggests that the statute should mean something different depending on which party initiates the appeal. The third ground assumes the answer; the very question before us is *whether* Petitioner completed the seven-year requirement in accordance with the statute. In *Ram* we answered that question "no," because the accrual of relevant time stopped upon the order to show cause.

Like the Rams, Petitioner was served with an order to show cause long before the effective date of IIRIRA. Like the Rams, Petitioner's case was pending when IIRIRA took effect. Like the Rams, Petitioner had not accrued seven years of continuous physical presence before service of the order to show cause. The same stop-time rule must apply.

### D. *The majority's reliance on other precedents is misplaced.*

The majority relies on *Astrero* for its conclusion that, as of June 16, 1997, there was statutory authority to consider Petitioner's request for suspension of deportation. (Maj. op. at 1275.) As the majority correctly points out (*id.*), *Astrero* construed § 309(a) as establishing a six-month waiting period between IIRIRA's enactment and its effective date. 104 F.3d at 266.

But *Astrero* also discussed § 309(c)(5)(A). As we said in *Astrero*, § 309(c)(5)(A) "concerns the retroactivity of the new § 240A *once it becomes effective*," *id.* (emphasis in original), and we warned that, "on and after April 1, 1997, the new requirements may apply retroac-

tively to trigger cutoff dates based on notices to appear issued prior to April 1, 1997," *id.* Of course, the date when the INS filed its memorandum in this case, reiterating its legal position—June 16, 1997—already was after the effective date of April 1, 1997.

When we decided *Astrero* in December of 1996, the new rules had not yet become effective, so those comments about the future retroactivity of § 309(c)(5)(A) may not have been a holding, as distinct from a cautionary note. *Ram*, however, picked up that suggestion where *Astrero* left off.

In the light of *Ram*, the majority's reliance on *Guadalupe–Cruz* and *Castillo–Perez* is similarly misplaced. *Guadalupe–Cruz* and *Castillo–Perez* both specifically state that they do not decide the issue of the stop-time rule's retroactivity. ("Petitioners also challenge the application of the stop-time rule to their cases, arguing that ... the stop-time rule should not apply to Orders to Show Cause served before IIRIRA was enacted.... Given our holding, we do not reach [this] issue[ ]." *Guadalupe–Cruz*, 240 F.3d at 1210 n. 1; "[W]e decline to exercise our discretion to consider the BIA's holding that NACARA's timing rule is triggered by an order to show cause and should generally apply retroactively." *Castillo–Perez*, 212 F.3d at 523.) That issue of retroactivity was decided squarely in *Ram*.

Moreover, neither case is an exception to the BIA's obligation to apply current law. In both cases, the BIA applied the then-effective IIRIRA stop-time rule. Although we reversed in both cases, we did not do so because the *BIA's* application of IIRIRA law was in error. Rather, the errors in each case took place at the *IJ* level.

In *Guadalupe–Cruz*, we reversed because the IJ had applied the stop-time rule in March of 1997, before the effective date of IIRIRA, in clear violation of *Astrero*

and § 309(a). 240 F.3d at 1211. In *Castillo–Perez,* we reversed because the petitioner had not received a proper hearing before an IJ as a result of ineffective assistance of counsel. 212 F.3d at 527. Due process required that Castillo–Perez be afforded that opportunity. *Id.* at 528.

### E. The BIA was bound to apply current law when it decided this case.

The majority errs further when it carves out an exception to the rule that the BIA *must* apply the current law as of the date of its decision. *Urbina–Mauricio,* 989 F.2d at 1088 n. 4. Indeed, "the BIA was *required* to apply the law existing at the time of its review, *even if different from the law applied by the IJ." Ortiz v. INS,* 179 F.3d 1148, 1156 (9th Cir.1999) (emphasis added).

As a rationale for carving out an exception, the majority repeatedly asserts that the INS acted improperly when it failed to respond to Petitioner's citation to *Astrero* and when it maintained its appeal thereafter. (Maj. op. at 1274–1276.) I disagree.

● When the INS filed its appeal to the BIA, *Astrero* had not been decided yet, so the taking of the appeal plainly was proper.

● The INS had no obligation to withdraw its appeal after *Astrero,* either, especially in view of our acknowledgment in that case that § 309(c)(5) would make the stop-time rule retroactive to cases like Petitioner's. Although the majority does not phrase it this way, what the opinion really means is that the INS had to withdraw its appeal after we decided *Astrero.* Functionally, that is what the majority is forcing upon the INS: because, in the majority's view, the appeal became "meritless," the court will not give effect to the existence of the appeal by requiring the BIA to apply current law as it usually must. In my view, that result usurps the executive-branch function of deciding whether to continue to prosecute an appeal. Nor was the appeal "meritless." As our decision in *Ram* made clear, the INS's position ultimately proved to be correct in all respects.

● Finally, there is no support in the record for a conclusion that the BIA itself acted improperly in not deciding the case sooner. The BIA decided Petitioner's case within one year of the IJ's decision, certainly not an extraordinarily long delay.

### F. Conclusion

The IJ did not err, and neither did the BIA. Each applied the version of the stop-time rule that was extant when it heard the case. That was precisely Congress' intent. Accordingly, I would deny the petition, and I dissent from the majority's contrary holding.