**Jose Guadalupe ROMERO–ARIZAGA, et al., Petitioners,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

Nos. 01–70397, 01–71233.

INS. No. A72 116 444, A72–166–445, A72–116–446, A72–116–447.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 9, 2002.

Decided Aug. 2, 2002.

Before CANBY and RYMER, Circuit Judges, and BERTELSMAN,* District Judge.

### MEMORANDUM **

Jose Guadalupe Romero–Arizaga (lead petitioner), Carolina Madrigal de Romero and Edgar Madrigal Romero–Madrigal (collectively "petitioners"),[1] natives and cit-

---

* The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the

courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. Jose and Carolina are husband and wife. Edgar is their son.

izens of Mexico, petition for review from the Board of Immigration Appeals' (BIA) dismissal of their appeal from the Immigration Judge's (IJ) denial of their applications for suspension of deportation. Lead petitioner also contends that he was statutorily eligible for voluntary departure based on a showing of good moral character. Finally, petitioners also seek review from the BIA's denial of their motion to reopen deportation proceedings. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a), *see Avetova–Elisseva v. INS*, 213 F.3d 1192, 1195 n. 4 (9th Cir.2000), and we deny the petition.

To be eligible for suspension of deportation, petitioners must meet a strict threshold criteria of seven years' physical requirement before a suspension of deportation will be considered. *See Dasigan v. INS*, 743 F.2d 628, 629–30 (9th Cir.1984). In determining when this time period begins to run, the "stop-time" rule set forth in § 309(c) of the Illegal Immigration Reform and Individual Responsibility Act (IIRIRA) applies. Under the stop-time rule, an alien's period of continuous physical presence ends upon service of an Order to Show Cause OSC). *See Ram v. INS*, 243 F.3d 510, 518 (9th Cir.2001) (*citing* INA § 240A(d)(1)). In this matter, OSC's were served on the petitioners in January of 1994.

The BIA applied the stop-time rule to petitioners' appeal, although the IJ applied the previous law.[2] Pursuant to *Ram*, 243 F.3d at 516, it was not error for the BIA to apply the stop-time rule in the present case. Further, although we allowed an exception to this rule based on an appeal made in bad faith in *Otarola v. INS*, 270 F.3d 1272 (9th Cir.2001), this exception does not apply in the present case. Petitioners were in fact the first to file an

appeal to the BIA in the matter, not the INS.

██ Petitioners asserted at their hearing that they initially entered the United States in 1988 without any departures; however, all documentation filed on petitioners' behalf began in 1990. Petitioners' explanation for the lack of documentation prior to 1990 is that the lead petitioner was paid in cash once he began working here and that their children did not begin to attend school in the United States until 1990. The record also contains two affidavits from petitioners' acquaintances stating that they have known the lead petitioner since his arrival in January 1990. The record also contains a letter from a parish administrator stating the petitioners had been members of his church since 1991. However, a later letter from the same church administrator states that he has "known" the family since 1988, with no explanation of his earlier letter. There are also six affidavits in the record from friends of the lead petitioner stating that he has been in the United States continuously since 1988. Finally, the record includes an application for asylum signed by lead petitioner which states that he and his family arrived in the United States in January of 1990.

The IJ relied heavily on the fact that all written documentation for petitioners' presence in the United States was dated beginning in 1990 and that they had no documentation establishing the full seven years of physical presence in the United States. Although petitioners' record included the above cited affidavits, no witnesses came forward to testify on behalf of petitioners at the hearing even though the hearing was continued to allow petitioners to present witnesses. Combining these

---

**2.** The IJ did not apply the stop-time rule enacted in IIRIRA because her decision was issued before the IIRIRA's effective date of April 1, 1997.

facts with the signed application for asylum by the lead petitioner stating that his family arrived in the United States in January of 1990, the IJ found that petitioners could not establish their presence in the United States for the prerequisite seven years, and the BIA agreed.

We review the BIA's decision under the substantial evidence standard. *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 815, 117 L.Ed.2d 38 (1992); *Hernandez–Luis v. INS,* 869 F.2d 496, 498 (9th Cir.1989). The only evidence supporting the petitioners' claims were statements made by persons who were not subject to cross examination, and the only documentation otherwise produced by petitioners begins in 1990. We find that substantial evidence exists to support the BIA's finding that petitioners failed to meet the seven years' physical presence requirement.

■ Beyond finding that the petitioners did not meet the seven-year requirement, the IJ also found that the lead petitioner could not meet the "good moral character" standard of 8 U.S.C. § 1254(a)(1) due to false statements made during his asylum interview. We review this finding under a substantial evidence standard, and pursuant to *Ramos v. INS,* 246 F.3d 1264, 1266 (9th Cir.2001), we cannot say that the IJ erred given the misrepresentations made by the lead petitioner.

■ The IJ concluded that all the petitioners were statutorily ineligible for voluntary departure under 8 U.S.C. § 1254(e)(1) due to the finding as to the lead petitioner. The BIA reversed the IJ's decision that the lead petitioner's family was statutorily ineligible for voluntary departure, and therefore, granted them voluntary departure as a matter of discretion. The BIA, however, agreed with the IJ's finding as to the lead petitioner and denied him voluntary departure. We do not have jurisdiction to review the discretionary denial of voluntary departure. *See Hernandez–Mezquita v. Ashcroft,* 293 F.3d 1161, 1165 (9th Cir.2002) (citations omitted).

■ Finally, on the issue of the BIA's denial of the petitioners' motion to reopen for repapering, we review motions to reopen for an abuse of discretion. *Arrozal v. INS,* 159 F.3d 429, 432 (9th Cir.1998). We will reverse the BIA's denial of a motion to reopen only if it is "arbitrary, irrational, or contrary to law." *Ahwazi v. INS,* 751 F.2d 1120, 1122 (9th Cir.1985). The petitioners were ineligible for repapering pursuant to IIRIRA § 309(c)(3) because a final administrative decision had been entered. Accordingly, the BIA did not abuse its discretion in denying the motion to reopen since there were no immigration proceedings pending at the time the request was made.

PETITION DENIED.