Uriel MARTINEZ, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 99–70716.

INS No. A72–681–245.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 9, 2002.

Decided Oct. 7, 2002.

Before CANBY and RYMER, Circuit Judges, and BERTELSMAN,* Senior District Judge.

MEMORANDUM**

Uriel Martinez petitions for review of the decision of the Board of Immigration Appeals ("BIA") that he was not eligible for suspension of deportation pursuant to former 8 U.S.C. § 1254(a)(1) because he failed to meet its requirement of seven years of continuous residence.[1] He challenges the BIA's application of the new "stop-time" rule that came into effect while his appeal to the BIA was pending. We deny the petition for review.

Martinez first entered the United States in either 1976 or 1981. At some time between 1984 and 1989, he left the United States for Mexico. He returned to the United States in April 1989.

The Immigration and Naturalization Service ("INS") served Martinez with an Order to Show Cause in August 1994. In June 1996, Martinez admitted deportability before an Immigration Judge ("IJ") and petitioned for suspension of deportation. Counting back to the 1989 entry, the IJ found that Martinez had met the time requirement of seven years of continuous physical presence in the United States prior to his petition for suspension of deportation. The IJ denied the petition on other grounds. Martinez appealed to the BIA.

While the appeal was pending, the "stop-time" rule of the Illegal Immigration Reform and Individual Responsibility Act ("IIRIRA"), came into effect. IIRIRA § 309(c)(5)(A). Under this rule, the accrual of time toward the seven-year requirement stops upon the initiation of deportation or removal proceedings. The BIA applied the stop-time rule to Martinez and held that he was not eligible for suspension. The BIA did not address the evidence of his presence prior to 1989, stating only that Martinez did not dispute that his continuous presence began in 1989. Because proceedings were commenced in 1994, he did not meet the seven-year requirement.

When Congress enacted the Nicaraguan Adjustment and Central American Relief Act ("NACARA"), it clarified the application of the stop-time rule, stating that it applied to Orders to Show Cause issued "before, on or after the date of enactment of [IIRIRA]." See IIRIRA § 309(c)(5)(A), NACARA § 203(a); see also Ram v. INS, 243 F.3d 510, 516 (9th Cir.2001). Thus,

* The Honorable William O. Bertelsman, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

1. Because the INS commenced deportation proceedings against Martinez prior to April 1, 1997, his case is governed by the transitional rules of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). IIRIRA § 309(c)(1), note to 8 U.S.C. § 1101.

Congress expressed its intent that the stop-time rule should apply to all cases, including deportation cases in process at the time of IIRIRA's enactment. *See Ram*, 243 F.3d at 516–17.

Even if there were a question concerning the intent of Congress, we would be bound by our decision in *Ram*. *Ram* held that the BIA was correct to apply the stop-time rule once it came into effect, even in cases like this one, where the alien was already in deportation proceedings on the effective date of the stop-time rule, and would have met the seven-year requirement in the absence of the rule. *Id.* The BIA thus properly applied the stop-time rule to Martinez.

Martinez contends that the decision in *Otarola v. INS*, 270 F.3d 1272 (9th Cir. 2001), carves out a significant exception to *Ram* for cases where the IJ properly applied the pre-existing rule at the time of his decision. *See Otarola*, 270 F.3d at 1275–77. We reject such a broad a reading of *Otarola*. *Otarola* created a narrow exception to *Ram*, designed to protect petitioners from frivolous appeals by agencies trying to reap the benefit of a new rule expected to come into effect after the original judgment. *See id.* at 1277. Here there was no such manipulation; Martinez himself appealed, and the BIA properly applied the rule in effect at the time of its decision.

Martinez also contends that, if the BIA was correct in applying the stop-time rule, he should be given the opportunity to present evidence of his presence in the United States prior to 1989. The record indicates, however, that Martinez attempted to account for his presence from 1980 forward. On his application for suspension of depor-

tation, he lists addresses from 1981 through 1984, but gives no indication of his whereabouts from 1984 until his entry in 1989. He also states that his first entry was from 1976–1984 and that his last entry was from 1989 to the present, again giving no information about where he was from 1984 until 1989. He submitted documentation of employment for the years from 1981–1984 and a California identification card from 1981, but he did not submit any documentation showing his presence from 1984 through 1989. The complete lack of any documentation from 1984 until 1989 gave the BIA sufficient reason to find that Martinez was not in the United States during this period. Therefore, we deny Martinez's petition for review.[2]

**PETITION FOR REVIEW DENIED.**

---

**2.** We do not consider Martinez's eligibility, if any, for relief under the class action pending in the district court in accordance with *Barahona–Gomez v. Reno*, 167 F.3d 1228 (9th Cir. 1999), *supplemental opinion*, 236 F.3d 1115 (9th Cir.2001). Our resolution of this case does not affect any interim or permanent relief awarded to members of the class certified in *Barahona–Gomez* 2002 WL 31029257.