Rafael Angel CAMACHO; Rosa Bertha Camacho; Rosa Bertha Camacho Petitioners,

v.

John ASHCROFT, Attorney General, Respondent.

No. 02–72638.
Agency Nos. A70–774–522, A70–214–564, A70–774–521.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2003.

Decided Feb. 5, 2004.

Carl Shusterman, The Law Offices of Carl Shusterman, Los Angeles, CA, Elif Keles, Los Angeles, CA, Genevieve Holm, DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Petitioners.

Regional Counsel, Western Region, Immigration & Naturalization Service, Laguna Niguel, CA, Los Angeles District Counsel, Office of the District Counsel, Department of Homeland Security, Los Angeles, CA, Ronald E. LeFevre, Chief Legal Officer, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, M. Jocelyn Wright, Genevieve Holm, Jacqueline R. Dryden, GOV, DOJ–U.S. Department of Justice, Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

Before PREGERSON, COWEN,* and W. FLETCHER, Circuit Judges.

## MEMORANDUM**

Petitioners Rafael Angel Camacho, Rosa Bertha Camacho and Rosa B. Camacho petition for review of the decision of the Board of Immigration Appeals ("BIA") denying their application for suspension of deportation pursuant to a now-repealed provision of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* (2003). Petitioners contend that they have satisfied the requirements for suspension of deportation under this provision, INA § 244(a)(1), 8 U.S.C. § 1254(a)(1) (1994), *repealed by* Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996), and that the BIA erred by denying relief. Because we find that the BIA did not err, we deny the petition.

Petitioners are natives of Peru who entered the United States illegally on March 23, 1985. On December 2, 1990, petitioners returned to Peru, reentering the United States in April or May of 1991. The

---

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

Immigration and Naturalization Service ("INS") initiated deportation proceedings against petitioners on October 19, 1995 by filing Orders to Show Cause ("OSCs") with the immigration court. Petitioners appeared before an immigration judge ("IJ") on February 12, 1996, conceded deportability, and informed the IJ that they were seeking suspension of deportation. The IJ set a merits hearing for June 20, 1996, and gave petitioners until March 22, 1996 to file their suspension applications.

The June 20 hearing did not take place, however, because petitioners filed a motion to continue, citing unavailability of counsel. This motion was granted, and the hearing was continued to January 22, 1997. For reasons not apparent in the record, the hearing was further continued to August 14, 1997. After another series of continuances, a merits hearing was finally held on June 9, 1999. The IJ denied petitioners' application for suspension of deportation, finding that the length of their stay in Peru rendered them statutorily ineligible for relief. Instead, the IJ granted voluntary departure. The BIA summarily affirmed the IJ's decision on July 17, 2002.

Under the INA before the passage of IIRIRA, a deportable alien could apply for suspension of deportation if certain statutory criteria were met, including a requirement that the alien "[have] been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of [the] application." INA § 244(a)(1), 8 U.S.C. § 1254(a)(1), *repealed by* Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). Under IIRIRA, suspension of deportation was replaced by a similar process entitled cancellation of removal, which was initiated by the service of Notices to Appear ("NTAs") and entailed stricter eligibility requirements than its predecessor. With regard to the continuous physical presence requirement itself, IIRIRA enacted two significant changes to the INA:

(d)(1) Termination of continuous period

For purposes of this section, any period of continuous residence or continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 1229(a) of this title. . . .

(d)(2) Treatment of certain breaks in presence

An alien shall be considered to have failed to maintain continuous physical presence in the United States under subsections (b)(1) . . . of this section [the cancellation of removal provision] if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days.

*Id.* § 240A(d)(1) & (2), 8 U.S.C. § 1229b(d)(1) & (2). Before the enactment of the INA § 240A(d)(1) (the "stop-time" provision), aliens could accrue time toward the continuous residence requirement during the pendency of deportation proceedings (but before they had formally applied for suspension of deportation). Before the enactment of INA § 240A(d)(2) (the "ninety-day cutoff" provision), temporary stays outside the United States of any length were evaluated to determine if they were "brief, casual, and innocent and did not meaningfully interrupt . . . continuous physical presence." INA § 244(b)(2), 8 U.S.C. § 1254(b)(2), *repealed by* Pub. L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996).

In order to facilitate the cases of aliens who were placed in deportation proceedings before IIRIRA was to go into effect, Congress passed a set of transitional rules. IIRIRA § 309. The rules provided that the effective date of IIRIRA (including the transitional rules themselves) would be April 1, 1997. *See id.* § 309(a). The "gen-

eral rule" for aliens who were already in deportation proceedings before this date was that, subject to other provisions in the transition rule, the new IIRIRA rules would not apply, and the proceedings would continue under the old law. *Id.* § 309(c)(1). However, one such exception to this general rule applied specifically to suspension of deportation proceedings:

> (c)(5) Transitional Rule with Regard to Suspension of Deportation Paragraphs (1) and (2) of sections 240A(d) of the Immigration and Nationality Act (relating to continuous residence or physical presence) shall apply to notices to appear issued before, on, or after the date of the enactment of this Act.

*Id.* § 309(c)(5). To clarify the confusion created by this provision (NTAs, a creature of IIRIRA, were never issued with regard to deportation proceedings), Congress amended § 309(c)(5) in the Nicaraguan Adjustment and Central American Relief Act, Pub. L. No. 105–100, tit. II, 111 Stat. 2193 (1997), *amended by* Pub. L. No. 105–139, 111 Stat. 2644 (1997) ("NACARA"). NACARA amended § 309(c)(5) to read:

> (c)(5)(A) In General—... paragraphs (1) and (2) of Section 240A(d) ... shall apply to orders to show cause ... issued before, on, or after the date of enactment of this Act.

NACARA § 203(1). On its face, therefore, IIRIRA's transitional rule relating to the stop-time and ninety-day cutoff provisions appears to apply those provisions retroactively to cover OSCs issued before April 1, 1997.

On June 9, 1999, applying IIRIRA § 309(c)(5) as amended by NACARA § 203(1), the IJ found that both the stop-time provision and the ninety-day cutoff provision were applicable to the OSCs issued against petitioners. Viewing the evidence in the light most favorable to peti-

tioners, the IJ held that petitioners' trip to Peru between December 1990 and April 1991 exceeded ninety days, that their period of continuous physical presence began anew on April 19, 1991, and that the period ended upon service of the OSCs on October 19, 1995. Because that period did not meet the seven-year continuous physical presence requirement under the old version of the INA, the IJ found petitioners ineligible for suspension of deportation.

Legal determinations of the BIA, including its interpretation of the INA, are reviewed *de novo. Ratnam v. INS,* 154 F.3d 990, 994 (9th Cir.1998). Because Congress has made an implicit delegation of authority to the Attorney General to interpret and apply the INA, however, the Court must accord deference to the BIA's interpretation of the statute to the extent the statute is ambiguous. *Chowdhury v. INS,* 249 F.3d 970, 972 (9th Cir.2001) (citing *Chevron U.S.A. v. Natural Res. Def. Council,* 467 U.S. 837, 843 n.9, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1994)). On appeal, petitioners advance three arguments: (1) that the IJ erred in applying IIRIRA's ninety-day statutory bar under the IIRIRA transitional rules; (2) alternatively, that the IJ erred in applying the IIRIRA transitional rules instead of the law in effect before IIRIRA's effective date, and (3) that under the law in effect before IIRIRA's effective date, they were statutorily eligible for suspension of deportation.

■ First, petitioners argue that the IJ incorrectly applied IIRIRA's transitional rules in holding that IIRIRA's ninety-day cutoff provision applied to their suspension of deportation application. The crux of their argument is that the provision applies only "for purposes of this section," meaning cancellation of removal generally, and not suspension of deportation retroactively. INA § 240A(d)(1), 8 U.S.C. § 1229b(d)(1). They argue that IIRIRA

§ 309(c)(5)(A) as amended by NACARA § 203(1) only applies INA § 240A(d) to OSCs in cases in which the Attorney General has elected to proceed against an alien under the removal regime. *See* IIRIRA § 309(2).

Petitioners' argument is foreclosed by *Ram v. INS*, 243 F.3d 510 (9th Cir.2001). In *Ram*, petitioners were aliens who had been served with OSCs prior to April 1, 1997, but less than one year after first entering the United States. After proceedings stretched on for a period exceeding seven years, petitioners applied for suspension of deportation, which was denied based on the stop-time rule, INA § 240A(d)(1). On petition for review, the *Ram* petitioners advanced the same argument as petitioners in this case: that application of a provision of INA § 240A(d) is limited to the removal regime by the language of that section of the statute. *See Ram*, 243 F.3d at 514. We rejected that argument, holding that "the 'for purposes of this section' language in the stop-time rule does not ... necessarily limit the scope of IIRIRA section 309(c)(5)(A) to removal proceedings." *Id.* at 515 (citations omitted). We found the government's interpretation of the statute to be "the most reasonable interpretation," and although we identified some degree of ambiguity in IIRIRA's language, we resolved the ambiguity in the government's favor after an examination of the provision's legislative history. *Id.* There is no principled basis for distinguishing petitioners' case from *Ram* based on any differences in the statutory language between INA § 240A(d)(1) and INA § 240A(d)(2). IIRIRA § 309(c)(5)(A) clearly applies both provisions of INA § 240A(d) to OSCs served before April 1, 1997, and, while *Ram* did not address INA § 240A(d)(2) specifically, its analysis applies squarely to petitioners' argument. Therefore, we find that the IJ did not err in applying IIRI-RA's ninety-day statutory bar under the IIRIRA transitional rules.

■ Petitioners next contend that the IJ erred in applying IIRIRA's transitional rules at the June 9, 1999 hearing, as opposed to the law that existed before the April 1, 1997 effective date of IIRIRA. Petitioners do not dispute the general proposition that the transitional rules apply in cases initiated before but decided after IIRIRA's effective date. *See, e.g., Astrero v. INS*, 104 F.3d 264, 266 (9th Cir.1996) (holding that because IIRIRA § 309 would not become effective before April 1, 1997, retroactive application of INA 240A could not take effect before that date). Rather, they argue that they are entitled not to have the transitional rules apply because of *Otarola v. INS*, 270 F.3d 1272 (9th Cir.2001).

At best, however, *Otarola* stands for the proposition that a party will not be permitted to exploit procedural mechanisms to secure the application of more favorable law. *See Otarola*, 270 F.3d at 1276 ("Allowing the INS to appeal a correct IJ decision on a frivolous, non-discretionary procedural ground in order to avail itself of the stop-time rule would undermine clear Congressional intent to enact a 180–day delay period [before the effective date of IIRIRA]."); *see also INS v. Rios–Pineda*, 471 U.S. 444, 452, 105 S.Ct. 2098, 85 L.Ed.2d 452 (1985) (upholding the BIA's decision refusing to reopen a suspension proceeding where the aliens had filed frivolous appeals in order to accrue seven years of continuous residence). Both the IJ's decision and the BIA's summary affirmance were rendered long after the effective date of IIRIRA. Significantly, none of the numerous continuances in this case were sought by the government; indeed, the majority of them were sought by petitioners themselves. Without any sort of allegation of a bad faith misuse of procedural mechanisms by the government, pe-

titioners have no legal basis under *Otarola* to assert that they are entitled to an exception from the IJ's application of IIRIRA's transitional rules.

Because we find the IJ correctly applied IIRIRA's ninety-day statutory bar, we need not address petitioners' third argument, that they were eligible for suspension of deportation under the law in effect before IIRIRA's effective date. Because petitioners' trip to Peru between December 1990 and April 1991 exceeded ninety days, their period of continuous physical presence began anew upon their return. Therefore, they had not accrued the required seven years by the time the INS served them with OSCs on October 19, 1995. For these reasons, the BIA did not err in affirming the IJ's denial of their application for suspension of deportation.[1]

**PETITION DENIED.**

---

**1.** Also pending before us is that part of petitioner Rosa B. Camacho's motion to stay her petition for review that we did not resolve by our Order of November 25, 2003. Petitioner conceded at oral argument that the BIA has denied her motion to reconsider and remand. Accordingly, the motion before us is denied as moot.